CARMEN PLAZA DE JENNINGS (SBN 091742)
cpdjennings@hkemploymentlaw.com
JAYNE BENZ CHIPMAN (SBN 140048)
jchipman@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
505 Montgomery Street 13th Floor
San Francisco, CA 94111
Telephone: (415) 835-9000
Facsimile: (415) 834-0443

Attorneys for Defendants
CITY OF GILROY and GILROY POLICE DEPARTMENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PATRICIA HARRELL, an individual,

Plaintiff,

vs.

CITY OF GILROY, GILROY POLICE DEPARTMENT, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, and DOES 1-50, inclusive,

Defendants.

Case No.

**DECLARATION OF CARMEN PLAZA DE JENNINGS IN SUPPORT OF REMOVAL TO FEDERAL COURT (FEDERAL QUESTION)**

[Notice of Removal; Declaration of Carmen Plaza de Jennings filed concurrently herewith]

**Santa Clara Superior Court Case No.:** 17CV314125

//

//

//

//

//

//

//

//

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

I, Carmen Plaza de Jennings, declare and state as follows:

1. I am an attorney admitted to practice law in the State of California and before this Court. I am a partner in the law firm of Hirschfeld Kraemer LLP, attorneys of record for Defendants City of Gilroy and Gilroy Police Department ("Defendants"). I make this Declaration in support of Defendants' Removal to Federal Court.

2. Attached hereto as **Exhibit A** is a true and correct copy of the Complaint filed by Plaintiff, Patricia Harrell ("Plaintiff"), on or about August 7, 2017, in the Superior Court of the State of California for the County of Santa Clara, titled *Patricia Harrell v. City of Gilroy, Gilroy Police Department, American Federation of State, County and Municipal Employees, and Does 1-50, inclusive,* Case No. 17CV314125.

3. Plaintiff served Defendants with the Summons and Complaint on August 11, 2017.

4. Defendant American Federation of State, County and Municipal Employees (AFSCME), is not named as a defendant to the cause of action for Violation of Federal Civil Rights, 42 U.S.C. § 1983, and AFSCME's legal counsel Andrew H. Baker of Beeson, Tayer & Bodine advised Defendants that AFSCME has not been served with the Complaint. Mr. Baker further stated that if AFSCME is served with the Complaint at some future date, AFSCME has no objection to removal of the Complaint to federal court and would join in the removal.

5. Pursuant to 28 U.S.C. § 1446(d), Defendants are concurrently filing a Notice to the State Court of Removal with the Superior Court of the State of California in and for the County of Santa Clara and serving it on Plaintiff.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Executed on this 8th day of September, 2017, in San Francisco, California.

CARMEN PLAZA DE JENNINGS

# Exhibit A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

2017 AUG -7 P 12:10

V.Taylor

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
City of Gilroy, Gilroy Police Department, American Federation of State, County and Municipal Employees, and Does 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
Patricia Harrell, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Santa Clara County Superior Court
191 North First Street
San Jose, CA 95113

CASE NUMBER:
*(Número del Caso):* 17CV314125

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lori Costanzo, Costanzo Law Firm, APC, 111 W St. John St #700, San Jose, CA 95113, (408) 993-8493

DATE: *(Fecha)* AUG -7 2017 Clerk, by *(Secretario)* V.Taylor, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: CITY OF GILROY

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☒ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:



Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

2017 AUG -7 P 12: 10

V.Taylor

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
City of Gilroy, Gilroy Police Department, American Federation of State, County and Municipal Employees, and Does 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
Patricia Harrell, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Santa Clara County Superior Court
191 North First Street
San Jose, CA 95113

CASE NUMBER: *(Número del Caso):* 17CV314125

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lori Costanzo, Costanzo Law Firm, APC, 111 W St. John St #700, San Jose, CA 95113, (408) 993-8493

DATE: *(Fecha)* AUG -7 2017 Clerk, by *(Secretario)* V.Taylor , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* GILROY POLICE DEPARTMENT

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*



Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**LORI J. COSTANZO, SBN 142633**
Lynn Toma, SBN 100384
Andrea Justo, SBN 310122
COSTANZO LAW FIRM, APC
111 West Saint John Street, #700
San Jose, CA 95113
Phone: 408.993.8493
Fax: 408.993.8496
Email: Lori@costanzo-law.com
Lynn@costanzo-law.com
Andrea.Justo@costanzo-law.com

Attorneys for **Plaintiff, Patricia Harrell**

V.Taylor

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SANTA CLARA - UNLIMITED JURISDICTION

PATRICIA HARRELL, an individual,

Plaintiff,

vs.

CITY OF GILROY, GILROY POLICE DEPARTMENT, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, and DOES 1-50, inclusive,

Defendants.

Case No.:

**COMPLAINT FOR DAMAGES:**

1. **Age Discrimination in Violation of Gov't Code §12940**
2. **Gender Discrimination in Violation of Gov't Code §12940**
3. **Sexual Harassment in Violation of Gov't Code §12940**
4. **Failure to Take Steps to Prevent Discrimination and Harassment in Violation of Gov't Code §12940(k)**
5. **Whistleblower Retaliation in Violation of Labor Code §1102.5**
6. **Retaliation in Violation of Gov't Code §12940 et seq.**
7. **Wrongful Termination in Violation of Public Policy**
8. **Breach of Duty of Fair Representation**
9. **Negligent and Intentional Misrepresentation**
10. **Negligent and Intentional Infliction of Emotional Distress**
11. **Breach of Written and Implied-in-Fact Contract**
12. **Breach of the Implied Covenant of Good Faith and Fair Dealing**
13. **Violation of Federal Civil Rights (42 U.S.C. §1983)**

**DEMAND FOR JURY TRIAL**



COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

**COMES NOW** Plaintiff, PATRICIA HARRELL, by and through her attorneys of record herein, who bring this Complaint against the above named Defendants, and in support thereof allege the following:

**PARTIES**

1. Plaintiff, PATRICIA HARRELL (hereinafter: "Plaintiff" or "Ms. Harrell") is an individual who, at all times alleged in this complaint was, and is, a resident of the County of Santa Clara, State of California, and was an employee of Defendant CITY OF GILROY (hereinafter "CITY OF GILROY" or "DEFENDANT") and Defendant GILROY POLICE DEPARTMENT (hereinafter "GPD" or "DEFENDANT").
2. Plaintiff HARRELL was a member of Defendant AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES (hereinafter "AFSCME" or "DEFENDANT"), whose local union office is located at 1150 North First Street, #101, San Jose, CA 95112.
3. Plaintiff HARRELL was, at all times relevant herein, employed as a Senior Public Safety Communicator by Defendants CITY OF GILROY, located at 7351 Rosanna Street, Gilroy, CA 95020, and GILROY POLICE DEPARTMENT, located at 7301 Hanna Street, Gilroy, CA 95020, respectively.
4. Defendant CITY OF GILROY is, and was at all times material hereto, a city and political subdivision of the State of California, duly organized and existing under the laws of the State of California. Defendant GILROY POLICE DEPARTMENT is an agency run by the CITY OF GILROY, and Defendants GILROY POLICE DEPARTMENT and CITY OF GILROY are each an "employer" as that term is defined in the California Fair Employment and Housing Act, and under the California Labor Code.
5. Plaintiff is ignorant of the true names or capacities of the Defendants sued here under fictitious names Does 1 through 50, inclusive. Plaintiff is informed and believes that each of the DOE defendants are responsible in some manner for the occurrences and injuries alleged in the complaint.
6. At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each and every Defendant was the agent or employee of each and every other

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

Defendant. In doing the things alleged in the causes of action into which this paragraph is incorporated by reference, each and every Defendant was acting within the course and scope of this agency or employment, and was acting with the consent, permission, and authorization of the remaining Defendants. All actions of each Defendant alleged in the causes of action into which this paragraph is incorporated by reference, were ratified and approved by officers and managing agents of every other Defendant.

7. Does 1 through 50, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to the Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by asserting their true names and capacities herein. Plaintiff is informed and believes, that thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those Defendants. Each reference in this complaint to "Defendant", "Defendants" or specifically named Defendant refers to all Defendants sued under fictitious names.

## JURISDICTION AND VENUE

8. The monetary value of Plaintiff's claim exceeds $25,000, and the amount in controversy is within the jurisdiction of this Court.

9. Plaintiff, at all relevant times, was and is a resident of the County of Santa Clara. Plaintiff is informed and believes that the named Defendants are entities in the County of Santa Clara. Plaintiff alleges on information and belief that Does 1-50 were and are California entities or individuals authorized to do, and who did business in the County of Santa Clara.

10. The acts, omissions, damages and injury that form the basis of this lawsuit were sustained in the County of Santa Clara.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff Harrell has exhausted all administrative remedies necessary to bring this action. She filed a charge of discrimination with the California Department of Fair Employment and Housing ("DFEH) and was issued a right-to-sue letter on May 24, 2017. A true and correct copy of Ms.

Harrell's right to sue letter, DFEH complaint, and amended complaint are attached hereto collectively as Exhibit "A."

**FACTS APPLICABLE TO ALL CAUSES**

12. Patricia Harrell began working for the Gilroy Police Department in November 1990, as a Public Safety Communicator Trainee.

13. Ms. Harrell loved helping the community and her peers. She was even recognized as Dispatcher of the Year in several years, and recognized at the County/State level for her public safety work. She never had a negative performance evaluation nor received any disciplinary action against her until 2006, which the City of Gilroy later admitted was unwarranted.

14. Her tenure with GPD and involvement with the community enabled her to develop relationships with GPD staff – she knows many of the past and current police officers since they were children.

15. Ms. Harrell has been happily married for twenty-nine years, and has known her spouse for thirty-five years. She with four children.

***Defendant Gilroy Police Department Has Nurtured and Condoned a Culture of Sexual Activity Within the Department***

16. While Ms. Harrell attempted to remain professional in the job she loved, many employees began to create a culture of sexual promiscuity, harassment, intimidation, and sexual assault within the GPD.

17. Such activities included, but were not limited to the following:

a. Andrea Arthur, a GPD Public Safety Communicator, discussed while on the job, how her husband, Gilroy Police Officer Royce Heath, had brought a Salinas police officer to "screw her" while Heath watched. She later stated that she did not do it because it would have changed her relationship with Royce Heath since, at that time, they were engaged.

b. A few months after Ms. Arthur made the aforesaid statement in the communication center, Officer Justin Matsuhara entered the Communication Center and began talking with Ms. Arthur about her breasts, and she told him he could feel/touch them. Ms. Harrell pulled Officer Matsuhara aside in an attempt to keep it professional, and to prevent him from engaging in any further sexual touching since he was a married man with a child, but he brushed her aside.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

c. At the Gilroy Police Officers' Association Christmas party, Ms. Arthur asked Officer Heath whether he would "do her," referring to Ms. Annette Juco, a Public Safety Communicator, who was walking by. Officer Heath stated, "Not with a paper bag over her head," and then said to Ms. Harrell, "now if you want to take a go at it."

d. At the same party, the female spouses of Officers Geoff Guerin and Royce Heath, were outrageously intoxicated and were sexually touching both males and females (including each other). Also, several people at the party were taking pictures of females exposing their private parts.

e. On a separate occasion, Officer Heath showed sexually explicit photos that were inside a locker depicting GPD personnel groping Ms. Arthur.

f. During another Gilroy Police Officers' Association Christmas party, Ms. Lisa Canali, who was dating Officer Bill Richmond at the time, fell off a bar stool, exposing her leopard print underwear. At the time of this incident, then Sergeant Heath, took pictures of her and showed them to others. When asked why neither Ms. Canali nor Officer Richmond took any action to complain of Sergeant Heath's improper conduct, Ms. Canali stated that Officer Richmond is "brand new and he doesn't want to stir the pot."

g. Improper sexual conduct also occurred at an annual event organized by GPD personnel which was intended to honor the memory of Officer Ray Hernandez, who had died from a heart attack. Various GPD employees and their families would go to Harris Ranch to participate in "Ray's Ride." Sergeant Greg Flippo invited both Ms. Arthur and then Sergeant Heath to the event. Also present at the event were Mitch and Lynette Madruga, Taryn Hathaway (Officer Hernandez' significant other), Michael and Carrie Beebe, Kim Sullivan, and others. By the swimming pool, Ms. Arthur boasted about a piercing on the clitoris of her vagina. When some asked to see it, she opened her wrap and spread her legs. Mortified, several women and children vacated the swimming pool.

h. Kim Sullivan, who worked at the GPD jail, went to a work-related class, with then Sergeant Heath (her supervisor). While waiting for dinner, Sergeant Heath entered Ms. Sullivan's hotel room with his laptop and watched pornography thereon.

i. For the first several years of his employment, Communications Supervisor Steve Ynzunza attempted to make sexual advances toward Ms. Harrell, inviting her to come to his house because he was making "strawberry margaritas," despite knowing that Ms. Harrell was married with children.

j. Communications Supervisor Ynzunza engaged in sexual activity with other GPD officers and employees, and attempted to have sex with men by luring them to his house with the promise of "wild" and "crazy" women and alcohol. When women did not show up, Communications Supervisor Ynzunza would tell the male guest, "Let's get naked while we wait." Ms. Harrell is informed and believes that Communications Supervisor Ynzunza applied to be a Los Gatos officer, but was denied employment by the Los Gatos Police Department ("LGPD") because of attempted sexual behavior with other males.

k. Heath, who at that time had been promoted to Captain, went to Las Vegas with Sergeant Jeff Roccaforte and Officer Larkin. While in Las Vegas, Sergeant Heath suspected that his wife, Ms. Arthur, was engaging in sexual activity with another man without Sergeant Heath being present to watch, so he threatened the other man.

l. Officer Geoff Guerin and Officer Jesus Contreras had sexual intercourse with members of the Gilroy Explorers, comprised of youth ranging in age from fourteen (14) to twenty-one (21). When their conduct came to light, Officer Guerin was demoted, but then "got his stripes" back, while Officer Contreras was allowed to resign. Officer Contreras is currently seeking employment as a police officer with other local law enforcement agencies.

m. At office parties, GPD employees would throw their keys in a bowl and whoever pulled a key had sex with the person who owned the key.

18. Even if employees did not engage in the above illicit sexual activities, they had other types of close relationships with one another that affected their impartiality and objectivity. For example:

a. Prior to her marriage, Ms. Arthur asked Ms. Juco to be her maid-of-honor. However, during work hours in the Communication Center, Ms. Arthur would state how Ms. Juco's "fat ass could never get into that dress" and how she would ruin her wedding pictures.

b. Captain Kurt Svardal and Captain Debbie Moore have been in a relationship for years.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

*Ms. Harrell Faced Retaliation for Her Refusal to Condone This Culture*

19. Ms. Harrell refused to engage in the aforementioned sexual activity or condone the sexually charged culture of the GPD. The GPD therefore retaliated against her by subjecting her to unwarranted discipline, changing her schedule, removing her from her office space, assigning her multiple trainees to train, even though Ms. Harrell was already extremely overworked. She was working fifty-five (55) overtime hours a month during her last twelve (12) months of employment, leading a new Computer Aided Dispatch ("CAD") project and Geographical Information Systems ("GIS") project that were twelve (12) to eighteen (18) months long respectively, working on the annual Garlic Festival project, which took two (2) months of planning, as well as ongoing database management of all 9-1-1 CAD systems and phone systems, before she was ultimately terminated.

*Ms. Harrell Received An Unwarranted Suspension When She Left Work To Help Her Dying Friend, Officer Ray Hernandez*

20. Ms. Harrell had a close friendship with Officer Ray Hernandez and his long-time partner and the mother of his children, Officer Taryn Hathaway. The depth of their friendship is evidenced by the fact that Ms. Harrell is the godmother to Officer Hernandez and Officer Hathaway's two daughters, and the fact that Ms. Harrell attempted to counsel both Officer Hernandez and Officer Hathaway when Officer Hernandez decided to end his relationship with Officer Hathaway for Ms. Bridgette O'Donovan, whom he met while she was an eighteen-year-old Gilroy Police Explorer.

21. On November 20, 2005, Ms. Harrell was fourteen minutes away from ending her shift. At the time, there were two other Public Safety Communicators in the room, Mr. Mark Forry and Ms. Juco.

22. Ms. Harrell heard a 9-1-1 call from Ms. Bridgette O'Donovan, who was twenty-years-old at the time she was dating Officer Hernandez. She stated that Officer Hernandez was unconscious and not breathing.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

23. Shocked and believing that there was sufficient staffing (two Public Safety Communicators) in the communications center, Ms. Harrell told Mr. Forry and Ms. Juco that she had to leave the center to be with her friend.

24. When Ms. Harrell arrived at Officer Hernandez' house, Ms. Harrell was initially asked by Sergeant Jim Gillio to comfort Ms. O'Donovan, but Ms. Harrell stated that her place was by Officer Hernandez' side. Officer Hernandez passed away that evening due to a heart attack.

25. Even though Ms. Harrell was asked to, and did act as the liaison between GPD and Officer Hernandez' family during the funeral arrangements and mourning process, Ms. Harrell was disciplined for "failing to remain at her assignment and on duty until properly relieved or dismissed." The Chief of Police at the time, Gregg Giusiana, later apologized in late May 2006 to Ms. Harrell for disciplining her, stating, "If I knew then what I know now, I would have handled it differently."

26. Even though two other Public Safety Communicators were manning the communications center when Ms. Harrell left to be at Officer Hernandez' side, Captain Moore later commented that Ms. Harrell, in leaving her post, was "no better than the officers leaving their post at (Hurricane) Katrina."

*Ms. Harrell Faced Retaliation for Encouraging Officer Safety and Professionalism*

27. Ms. Harrell was the most senior dispatcher in GPD. As such, she sought to ensure that the dispatchers were treated with respect. For example, if a GPD officer was unprofessional on the radio, she would attempt to rectify the situation so that an incident of unprofessionalism did not happen again.

28. Because of these efforts, Ms. Harrell faced retaliation. Ms. Harrell had spoken to Sergeant Gillio regarding his officers' and had asked whether his officers could be more specific when communicating with the Communication Center dispatchers; for example, requesting that they state "I'm 11-95 (car stop) at (location) and license plate," which was protocol, as opposed to informing the dispatchers after the fact or providing only partial information. She reasoned that in addition to promoting professionalism, such specificity would also ensure officer safety. She

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

noted that "if an officer doesn't come home, the dispatcher becomes guilty for the rest of their lives."

29. In contravention of her request, the officers continued to improperly communicate via radio and phone when speaking to the Communications Center dispatchers, and they were advised to stop acknowledging Ms. Harrell in any way, in retaliation for her having attempted to instill greater professionalism with respect to the communications between the officers and the dispatchers.

30. Approximately a year after Officer Hernandez' death, Ms. Harrell confronted Officer Geoff Guerin, whom she had known since he was young man, as to why he and select others did not look at, nor acknowledge Ms. Harrell when she was present. Officer Guerin got very emotional and began to cry and stated, "I'm sorry," "we fucked you," "I can't look at you because I feel bad," and "we were told by and he was our Sergeant (Sergeant Jim Gillio) to fuck with you (Ms. Harrell) and we were all brand new officers, so you got fucked with that."

***Ms. Harrell Also Faced Discrimination Based on Her Age and Gender***

31. Ms. Harrell has also faced discrimination based on her age and gender. For example, spiteful of her seniority and years of experience, Officer Deras stated in October 2007, "You and the people who have been here a long time think your shit don't stink." Ms. Harrell has also been called a "bitch" has received unwanted sexual advances due to her gender.

32. During Police Chief Turner's tenure with the GPD from 2008 to 2016, Ms. Harrell was the only senior female other than Police Chief Turner, in the GPD.

33. Officer Deras and Heath moved up the ranks extremely fast, making Ms. Harrell their subordinate. At this point, Deras in particular now had the ability to act upon his views of Ms. Harrell as a senior female.

34. One such example relates to shifts. Ms. Harrell had seniority among the dispatchers and was entitled to first choice in shift assignments and had been working during the day for many years. However, Deras assigned Ms. Harrell to the less favorable night and weekend shifts, allowing younger female employees to select the week day shifts.

35. Deras also overloaded Ms. Harrell with dispatcher duties, training duties, and overtime. When she complained that it was too much for one person to handle, Ms. Harrell was subjected to discipline.

***Ms. Harrell Received a Written Reprimand for Warning Julie Ines, a GPD employee, to be Careful Around Ms. Arthur and Officer Heath***

36. On April 2, 2008, Debbie Moore, who was then a GPD Captain, compiled an internal affairs ("IA") packet regarding complaints against Mr. Harrell, and delivered it to Sergeant John Sheedy. Since Captain Moore was "out of the office from May 2-23, 2008," she asked him to conduct an investigation of Ms. Harrell by May 6, 2008, and to submit an investigatory report directly to Captain Kurt Svardal. The IA investigation of Ms. Harrell arose due to Officer Heath and Ms. Arthur's allegation that Ms. Harrell had committed an "unwarranted personal attack" against them, by telling GPD employee Julie Ines that Ms. Arthur and Officer Heath "could not be trusted," and "to be careful about what she said and did" around them.

37. Ms. Harrell had warned Ms. Ines to be careful around Ms. Arthur and Officer Heath because of Ms. Arthur's remarks that she was writing a "book," implying that she was documenting all of the sexual and other improper behavior that was going on at GPD, and that if she was going down, she would take others down with her. On previous occasions, Ms. Harrell was ordered to "write up" Ms. Arthur for performance issues, including Ms. Arthur's handling of a call, wherein she was rude to the caller and did not obtain enough information to resolve the matter. When Ms. Harrell brought Ms. Arthur's remarks about her "book" to the attention of Communications Supervisor Steve Ynzunza and Captain Debbie Moore, they ordered Ms. Harrell to "write up" Ms. Arthur regarding involving the call that Ms. Arthur had mishandled, but they said nothing about the "book" she was keeping, ignoring this issue.

38. During Sergeant Sheedy's interview of Ms. Arthur, she initially stated that she heard about Ms. Harrell's alleged comments warning Ms. Ines about her, from Officer Heath, but later stated that Ms. Ines told her directly about Ms. Arthur's comments, in passing.

39. Sergeant Sheedy's report did not discuss this contradiction with respect to how Ms. Arthur learned about the comments made about her by Ms. Harrell. His report also failed to fully explore

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

and document Ms. Harrell's explanation of improper conduct on the part Ms. Arthur and Officer Heath, and it even tried to minimize the improper nature of the conduct.

40. For example, during Ms. Harrell's interview, Ms. Harrell stated that she told Julie Ines to be careful around Ms. Arthur and Officer Heath, because she "didn't want her (Julie) to put herself in harm's way, and wanted her to be careful about what she said because of **all the things that are going on in the PD**". Instead of asking Ms. Harrell to elaborate, Sergeant Sheedy's report states, "I believe what she was speaking about was the bickering going on in the Communications Center and with some employees," when what she was really referring to was all of the sexual misconduct (sexual and otherwise) occurring within the GPD. Also during Ms. Harrell's interview, Sergeant Sheedy turned off the recorder and warned Ms. Harrell by stating, "We know what they're doing. They're after you. You're in the spotlight. You need to lay low," which Ms. Harrell took to mean that Ms. Arthur and Officer Heath were after her. Tina Acree, Ms. Harrell's AFSCME union representative at that time, was present at the time Sergeant Sheedy made the statements. While Sergeant Sheedy's report failed to mention sexual improprieties, he and the rest of the GPD were not only aware of such conduct, but he was also aware that Ms. Harrell had been targeted because she did not condone the sexual misconduct.

41. In his report, Sergeant Sheedy also tried to discredit Ms. Harrell's knowledge of the fact that Ms. Arthur kept a book in which she documented all of the sexual improprieties that occurred at the GPD, so that she could reveal the information should she ever be disciplined for her misdeeds. Ms. Arthur had stated that "**if she goes down, other people are going down with her.**" Ms. Arthur also claimed that Officer Heath supported the fact that she was keeping a book documenting misdeeds. Captain Moore, Communications Officer Steve Ynzunza (Arthur's immediate supervisor) and Senior Public Safety Communicator Jimmy Stephens were also aware of this book. Despite the fact that Ms. Harrell clearly indicated that she understood that Ms. Arthur's book contained a chronicle of sexual improprieties and her allegations of other improprieties that Ms. Arthur felt were committed by GPD employees, Sergeant Sheedy's report instead stated that Patty "**clearly** does not know exactly what was written in it, and **it is just her assumption** that it is a log book."

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

42. Sergeant Sheedy did not question Ms. Arthur, nor Officer Heath, about the book, but he did speak with Captain Moore regarding it. Captain Moore admitted that "**she had reviewed the book,**" that "**staff was aware of this issue,**" and that "**it has been addressed.**"

43. Despite clear evidence that Ms. Arthur and Officer Heath, rather than Ms. Harrell, had acted inappropriately, on June 18, 2008, Ms. Harrell received a written reprimand dated June 5, 2008 for "insubordination," "making disparaging remarks to duly constituted authority," and "knowingly making false statements regarding two Gilroy Police Department members."

***Ms. Harrell is Investigated a Second Time Without Justification***

44. On September 1, 2015, Captain Kurt Svardal advised Ms. Harrell, by personally serving her with a written notice of an investigative interview of her by the City of Gilroy and Gilroy Police Department. He also advised her that she would be interviewed by attorney Cynthia J. O'Neill, of the law firm Liebert, Cassidy, Whitmore, who had been hired by the City of Gilroy and GPD to conduct an investigation into Ms. Harrell's "possible violations of the City's Human Resources Rules and Regulations."

45. Ms. Harrell was unaware of any "possible violations" that she could have committed. Prior to her interview, Plaintiff was not provided any information regarding the investigation that provided her any meaningful opportunity to understand the nature of the investigation, or to prepare herself to address the questions posed to her.

46. Through counsel, Plaintiff had asked the appointed investigatory attorney, Cynthia O'Neill, to provide her with information concerning the nature of the investigation, but her request was denied. This request was again made at the outset of the interview, and was refused once again by Ms. O'Neill.

47. Ms. Harrell learned, during the course of the interview, that about five (5) months prior, Ms. Harrell, who is half Native American and half Salvadorean with an African-American husband, was accused of stating to her trainee, Guadalupe Duran, "you might be confused for a cleaning lady," due to Ms. Duran's living in Eagle Ridge. Eagle Ridge is a gated community inhabited by wealthy Gilroy residents.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

48. However, the context of that statement was misconstrued. At the time the statement was made, Ms. Harrell told Ms. Duran of an incident when she was at a public safety conference in Colorado, where she (Ms. Harrell) was confused for being a cleaning lady. In response, Ms. Duran stated that she lived in Eagle Ridge and when she walked around the property, residents would "look at me funny." In response, Ms. Harrell, sympathetic after relating how she was treated at the conference in Colorado, stated, "you might be confused for a cleaning lady."

49. Ms. Harrell later learned that Ms. Duran did not submit a complaint regarding this statement; Ms. Duran's husband submitted it.

50. Additionally, she was accused by Margaret Russell and Marisa Huntley of harassing them.

51. Rather than approach Ms. Harrell to discuss the accusations against her when they were made five (5) months prior to the issuance of the IA investigation notice, GPD conducted interviews with only the following employees:

a. Ms. Margaret Russell on April 28, 2015

b. Ms. Katie Povio on May 2, 2015,

c. Ms. Marisa Huntley on May 3, 2015,

d. Ms. Annette Juco on June 29, 2015, and

e. Ms. Guadalupe Duran on July 7, 2015.

52. Sergeant Jason Kadluboski conducted the interviews with Ms. Russell, Ms. Povio, Ms. Huntley, and Ms. Juco.

53. Ms. Russell had a positive relationship with Ms. Harrell, as evidenced in the texts between them. Ms. Harrell highly commended Ms. Russell's performance and dedication to the job. However, Ms. Russell was moved from being trained under Ms. Harrell to Communications Supervisor Ynzunza, who, despite not being the author of, nor involved in creating the dispatcher training program, training guide or procedure manual that Ms. Harrell had written, disagreed with Ms. Harrell's positive assessment of Ms. Russell's performance. It should be noted that Ms. Harrell had been training dispatchers for twenty (20) years. She was one of three trainers (including Jimmy Stephens and Niki Bruick) and, at the end of Ms. Harrell's employment with GPD, she was the only trainer, other than Ms. Juco. Ms. Juco, however, had no training experience.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

Communications Supervisor Ynzunza told Ms. Harrell that Ms. Russell quit, contrary to the call Ms. Harrell received from Ms. Russell, which indicated that she had been fired. Ms. Russell stated that she was not exactly sure what had happened, but that Communications Supervisor Ynzunza had told her she was not as far along as he thought she should be. She was then asked to return her police department items (ID, any keys, etc.) and was then walked out. She believed she may have been let go for not having met Communications Supervisor Ynzunza's expectations. The friendship between Ms. Harrell and Ms. Russell was so strong, that they were both in tears during the call.

54. Despite this friendship, during her April 28, 2015 interview, Ms. Russell claimed that Ms. Harrell knew Ms. Russell's boyfriend, and incorrectly stated that Ms. Russell's boyfriend "wanted to fuck me (Ms. Harrell)." Ms. Russell later discussed the lack of care by GPD, and in particular, Captain Deras and Communications Supervisor Ynzunza, stating "if they acted like they cared, I would've been truthful," and "I feel guilty about this."

55. During her May 2, 2015 interview, Ms. Povio stated that she did not have any conflicts with Ms. Harrell, that she felt that she had been treated fairly by Ms. Harrell, and that she did not experience any rudeness from Ms. Harrell. She attributed the discord between Ms. Harrell and Ms. Huntley's to "a personality conflict," to which Sergeant Kadluboski interjected, "It's just like cops."

56. During her May 3, 2015 interview, Ms. Huntley described her training experience with Ms. Harrell as "not good," and accused Ms. Harrell of having "preconceptions" about her (Ms. Huntley)." She further stated that "She (Ms. Harrell) knew what she was doing," and that "we know how women are." During this interview, Sergeant Kadluboski commented that the relationship between Ms. Harrell and Ms. Huntley seemed "awkward," that Ms. Harrell was "being nit-picky," and that it was a "hard position" for Ms. Huntley to be in."

57. On July 7, 2015, Captain Deras and Captain Svardal conducted Ms. Duran's interview, who stated that Ms. Harrell's alleged comment regarding how she might be confused for a cleaning lady, "caught me (Ms. Duran) off guard," but she did not claim that she suffered any adverse effects regarding her employment because of it. Nevertheless, Captain Deras interjected many comments during the interview, such as "I apologize," "I think you've been very honest with me," "You're

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

going to have to trust me," we "invest a lot of money in you," "we want this to be pleasurable for you," and admitted, "I don't want to put words in your mouth."

58. Attorney Cynthia O'Neill was given transcripts of the interviews and documents by GPD. She subsequently conducted her own interviews with Ms. Carmen Carpenter, Communications Officer Steve Ynzunza, Ms. Huntley, Ms. Juco, Ms. Duran, Ms. Povio, Mr. Mark Forry, and Ms. Harrell,. However, she relied on Sergeant Kadluboski's interview of Ms. Russell.

59. Like Captain Deras and Sergeant Kadluboski, Ms. O'Neill also interjected her own subjective comments during witness interviews. For example, she complimented Communications Supervisor Ynzunza by stating "you're so young," and she shared with him her nephew's experience as a lifeguard.

60. Ms. O'Neill completed her investigation report on September 30, 2015, concluding that Ms. Harrell "uses bullying behaviors that are detrimental to the effective training and retention of dispatchers."

*Ms. Harrell is Wrongfully Terminated*

61. Ms. Harrell was subsequently placed on paid administrative leave on January 11, 2016, and received a Notice of Discipline – Termination on March 21, 2016 for her alleged improper conduct relating to her trainees.

62. Ms. Harrell was terminated three (3) years before her full retirement age.

63. Ms. Harrell's former attorney, Kathryn Rains, who had been a Deputy Sheriff for Contra Costa County for eight (8) years, sent a letter to appeal the termination on March 28, 2016, a copy of which is attached hereto as Exhibit "B," but the City of Gilroy and GPD were unmoved, despite the fact that Ms. Rains' letter pointed out that when Ms. Harrell was assigned to train multiple new trainees, while she was overworked. She was working fifty-five (55) overtime hours a month during her last twelve (12) months of employment, leading a new CAD project and GIS projects that were twelve (12) to eighteen (18) months long respectively, working on the annual Garlic Festival project, which took two (2) months of planning, and engaging in database management, all of which caused her to be under tremendous stress.

64. Ms. Harrell continues to experience emotional distress from the ordeal of losing a job which she loved for twenty-five years. She also experiences emotional distress due to threats that have been made against her. She received a couple notes on her car and mailbox at work. The note on her car stated, "**Better watch your back, bitch**" (emphasis added). Ms. Harrell asked to see the video of the parking lot to determine who left the note, but was told no such tape existed.

65. Similar threats were made to retired GPD Sergeant Daniel Castaneda by Officer Heath, when they ran into each other. After retired GPD Sergeant Castaneda refused to shake his hand, Heath stated, "You know I'm packing," meaning that he was in possession of a gun.

***Ms. Harrell Sought the Help of Her Union, But Her Representative, John Tucker, Failed to Represent Her and Failed to Investigate***

66. During her first IA investigation, Ms. Harrell obtained the assistance of her AFSCME representative, Tina Acree, who was supportive throughout the process.

67. Ms. Harrell again reached out to AFSCME on July 16, 2015, asking George Popyack to consider her request to have Ms. Acree be her representative in the second IA investigation, since Ms. Acree was no longer the representative for Ms. Harrell's area.

68. Instead of approving Ms. Harrell's request, John Tucker was assigned to be her representative. She first attempted to contact him on September 2, 2015, but scheduling meetings, either in person or on the phone, was difficult. On November 29, 2015, Mr. Tucker's excuse for not being able to meet was that he was "out of the country last week and away from email." On March 28, 2016, he stated, "I talked to her (Ms. Rains). She is putting together the appeal notification. The 3 of us will meet soon to turn over most of the case to the Union. It'll save you a fortune and you'll have the same outcome." The plan was for the Union to provide Ms. Harrell with legal representation to challenge her termination, thereby saving her the expense of hiring private counsel.

69. Mr. Tucker told Ms. Harrell that he would bring her case up to the AFSCME council meeting, but then stated on April 21, 2016, "I couldn't make today's meeting. Don't worry it won't delay anything in your case. I already talked to enough people privately and know they're approving the case." Ms. Harrell advised Mr. Tucker about Ms. Rains' multiple attempts to contact him in

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

order to schedule a meeting on April 21, 2016, which never occurred because Mr. Tucker stated, that he'd "be out of the country for two weeks,"

70. On May 20, 2016, Mr. Tucker texted Ms. Harrell that, "Your case was approved last night. I'm working on meeting with our attorneys soon and will get with you soon." Subsequently, on May 27, 2016, Mr. Tucker sent a letter to GPD requesting information and documentation regarding Ms. Harrell's case. Although some requests were denied by GPD, no follow up requests were made by Mr. Tucker to obtain the information.

71. Ms. Harrell's requests to speak with the union attorneys went unanswered.

72. Ms. Rains met with Ms. Harrell and Mr. Tucker to review documentation, at which time Mr. Tucker again stated that a union attorney had already been approved and would be working on Ms. Harrell's matter.

73. On July 26, 2016, Mr. Tucker sent Ms. Harrell a letter stating, "I regret to inform you that after review of the issues, interview of some witnesses, a review of the City's Personnel Rules, and Police Department Policies and Procedures, our legal team no longer felt the case was a winnable one," and that "we can no longer represent you in this matter."

74. On August 1, 2016, Ms. Harrell responded to Mr. Tucker's rejection of her case by asking for the legal analysis, copies of the interviews that had been conducted, and the documentation that had been provided by GPD.

75. On August 30, 2016, Mr. Tucker stated "there are no written documents that contain a legal analysis of your case."

## FIRST CAUSE OF ACTION

## AGE DISCRIMINATION IN VIOLATION OF GOV'T CODE SECTION 12940 (AGAINST DEFENDANTS CITY OF GILROY AND GILROY POLICE DEPARTMENT)

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as thought fully set forth herein.

76. At all times relevant to this Complaint, CA Gov't Code Sec 12900 et seq. and its implementing regulations were in full force and effect.

77. Pursuant to CA Gov't Code sec 12940(a) it is unlawful for any employer to discriminate against an employee because of that employee's age.

78. At all times relevant to this Complaint, Plaintiff was an employee over the age of forty.

79. During Plaintiff's employment with Defendants, Defendants and their supervisors, engaged in actions that had a negative impact on the treatment of Plaintiff based on her age.

80. At all times relevant to this Complaint, Plaintiff was qualified for, and could perform the essential functions of her position with Defendants. Defendants were motivated by discrimination against Plaintiff on the basis of her age to provide her with disparate and unfavorable treatment compared to similarly situated employees who are not over forty years old.

81. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages including, but not limited to, loss of income and benefits, emotional distress and other general damages.

82. As a proximate result of the wrongful acts of Defendants, Plaintiff was forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorney fees and costs in connection therewith. Plaintiff is entitled to recover attorney's fees and costs under CA Gov't Code § 12965(b).

83. The conduct of Defendants and/or their agents/employees as described herein, was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendants according to proof.

84. Defendants are directly liable for the conduct of its owners, managers, directors, supervisors and other employees and agents.

**WHEREFORE,** Plaintiff prays for relief set forth below.

///

///

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

## SECOND CAUSE OF ACTION

## GENDER DISCRIMINATION IN VIOLATION OF GOV'T CODE SECTION 12940 (AGAINST DEFENDANTS CITY OF GILROY AND GILROY POLICE DEPARTMENT)

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

85. At all times relevant to this Complaint, CA Gov't Code Sec 12900 et seq. and its implementing regulations were in full force and effect.

86. Pursuant to CA Gov't Code sec 12940(a), it is unlawful for any employer to discriminate against an employee because of that employee's gender.

87. At all times relevant to this Complaint, Plaintiff was a female employee.

88. During Plaintiff's employment with Defendant, Defendant and its supervisors, engaged in actions that had a negative impact on the treatment of Plaintiff based on her gender.

89. At all times relevant to this Complaint, Plaintiff was qualified for, and could perform the essential functions of her position with Defendants. Defendants were motivated by discrimination against Plaintiff on the basis of her gender to provide her with disparate and unfavorable treatment compared to similarly-situated male employees.

90. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages including, but not limited to, loss of income and benefits, emotional distress and other general damages.

91. As a proximate result of the wrongful acts of Defendants, Plaintiff was forced to hire attorneys to prosecute his claims herein, and has incurred and is expected to continue to incur attorney fees and costs in connection therewith. Plaintiff is entitled to recover attorney fees and costs under CA Gov't Code § 12965(b).

92. The conduct of Defendants and/or their agents/employees as described herein, was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining

employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendants according to proof.

93. Defendants are directly liable for the conduct of its owners, managers, directors, supervisors and other employees and agents.

**WHEREFORE,** Plaintiff prays for relief set forth below.

**THIRD CAUSE OF ACTION**
**SEXUAL HARASSMENT IN VIOLATION OF GOV'T CODE §12940**
**(AGAINST DEFENDANTS CITY OF GILROY AND GILROY POLICE DEPARTMENT)**

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

94. At all times relevant to this Complaint, CA Gov't Code §12900 et seq. and its implementing regulations were in full force and effect, and were fully binding upon Defendant City of Gilroy and Gilroy Police Department. Specifically, §12940(j) prohibits an employer from sexually harassing an employee on the basis of her sex.

95. The actions of Captain Joseph Deras, Captain Royce Heath and Communications Officer Steve Ynzunza toward Plaintiff and Defendants' failure to prevent and remediate their actions, created a hostile sexual environment which materially altered Plaintiff's working conditions and which constitutes sexual harassment in violation of Gov't Code §12940(j)(1).

96. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages including, but not limited to, loss of income and benefits, emotional distress, and other general damages.

97. As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorney fees and costs in connection therewith. Plaintiff is entitled to recover attorney fees and costs under CA Gov't Code §12965(b).

98. The conduct of Defendants and/or their agents/employees as described herein, was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees

or supervisors authorized, condoned and ratified the unlawful conduct of the remaining employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendants according to proof.

99. Defendants are directly liable for the conduct of its owners, managers, directors, supervisors and other employees and agents.

**WHEREFORE**, Plaintiff prays for relief as set forth below.

**FOURTH CAUSE OF ACTION**
**FAILURE TO TAKE STEPS TO PREVENT DISCRIMINATION AND HARASSMENT IN VIOLATION OF GOV'T CODE §12940(k)**
**(AGAINST DEFENDANTS CITY OF GILROY AND GILROY POLICE DEPARTMENT)**

Plaintiffs re-allege and incorporate herein by reference all previous allegations set forth in this Complaint.

100. At all times relevant to this Complaint, CA Gov't Code §12900 et seq. and its implementing regulations were in full force and effect.

101. CA Gov't Code § 12940(k) provides that it is unlawful for any employer or covered entity to fail to take all reasonable steps necessary to prevent discrimination from occurring.

102. At all times relevant hereto, Defendant was aware of Plaintiff's age and gender, as well of all of the sexual misconduct to which Ms. Harrell was subjected, and the harassment and retaliation to which she was exposed because of her refusal to participate therein.

103. Defendants failed to take all reasonable steps necessary to prevent discrimination on the basis of age and gender from occurring. Among other things, Defendants failed to train and adequately supervise its employees in order to ensure that these employees were not violating the Fair Employment and Housing Act in their treatment of other employees. They further failed to take reasonable steps to prevent the harassment and retaliation that Ms. Harrell suffered because of her disapproval of the sexual misconduct occurring around her.

104. In committing these actions, Defendants violated the Fair Employment and Housing Act.

105. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages including, but not limited to, loss of income and benefits, and emotional distress, and other general damages.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

106. As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorney fees and costs in connection therewith. Plaintiff is entitled to recover attorney fees and costs under CA Gov't Code §12965(b).

107. The conduct of Defendants and/or their agents/employees as described herein, was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendants according to proof.

108. Defendants are directly liable for the conduct of its owners, managers, directors, supervisors and other employees and agents.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

**FIFTH CAUSE OF ACTION**
**WHISTLEBLOWER RETALIATION IN VIOLATION OF LABOR CODE §1102.5**
**(AGAINST DEFENDANTS CITY OF GILROY AND GILROY POLICE DEPARTMENT)**

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint.

109. When Plaintiff filed a DFEH complaint on or about November 5, 2015, she was engaging in activity protected under California Labor Code §1102.5.

110. Defendants were substantially motivated in terminating Plaintiff for refusing to condone their employees' sexual behavior and filing a complaint with the DFEH.

111. By reason of the conduct of Defendants as alleged herein, Plaintiff has necessarily had to retain attorneys to prosecute the within action. Plaintiff therefore, is entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

112. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress, and other general damages.

113. The conduct of Defendants and/or their agents/employees as described herein, was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendants according to proof.

114. Defendants are directly liable for the conduct of its owners, managers, directors, supervisors and other employees and agents.

**WHEREFORE,** Plaintiff prayers for relief as set forth below.

**SIXTH CAUSE OF ACTION**
**RETALIATION (Gov't Code § 12940 et seq.)**
**(AGAINST DEFENDANTS CITY OF GILROY AND GILROY POLICE DEPARTMENT)**

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint.

115. At all times mentioned herein, California Government Code §12940 et seq. was in full force and effect and was binding upon Defendant and each of its employees.

116. After Plaintiff refused to condone the sexual behavior of Defendants' employees and after filing her DFEH complaint, Defendants retaliated by eventually terminating Plaintiff.

117. By reason of the conduct of Defendants as alleged herein, Plaintiff has necessarily had to retain attorneys to prosecute the within action. Plaintiff therefore, is entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

118. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress, and other general damages.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

119. The conduct of Defendants and/or their agents/employees as described herein, was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendants according to proof.

120. Defendants are directly liable for the conduct of its owners, managers, directors, supervisors and other employees and agents.

**WHEREFORE,** Plaintiff prayers for relief as set forth below.

**SEVENTH CAUSE OF ACTION**
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
**(AGAINST DEFENDANTS CITY OF GILROY AND GILROY POLICE DEPARTMENT)**

Plaintiff re-alleges and incorporates by reference, each and every allegation contained above, inclusive, as though fully set forth herein.

121. At all times mentioned, the public policy of the State of California, as codified and expressed and mandated in Cal. Gov't Code §12940 et seq., is to prohibit employers from harassing or discriminating against any employee on the basis of gender. This public policy of the State of California is designed to protect all employees and to promote the welfare and wellbeing of the community at large.

122. Accordingly, the actions of Defendants in discharging Plaintiff were wrongful and in contravention of the express public policy of the State of California, to wit: The policy set forth in Gov't Code § 12940 et seq. and the laws and regulations promulgated thereunder.

123. By reason of the conduct of Defendants, Plaintiff has necessarily had to retain attorneys to prosecute the within action. Plaintiff therefore, is entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action. As a result of Defendants' actions, Plaintiff has sustained economic damages to be proven at trial. As a further result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages according to proof.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

124. The conduct of Defendants and/or their agents/employees as described herein, was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendants according to proof.

**WHEREFORE**, Plaintiff prayers for relief as set forth below.

**EIGHTH CAUSE OF ACTION**
**BREACH OF DUTY OF FAIR REPRESENTATION**
**(AGAINST DEFENDANT AFSCME)**

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint.

125. Plaintiff was a member of Defendant AFSCME, who paid monthly dues for over twenty-five (25) years to be a member of the union.

126. Plaintiff requested representation from Defendant regarding unwarranted allegations and subsequent termination by Defendants the City of Gilroy and the Gilroy Police Department.

127. Mr. John Tucker made numerous representations that Plaintiff would receive representation from Defendant AFSCME's attorneys.

128. Defendant AFSCME, despite this representation, ultimately refused Plaintiff's request for legal representation.

129. Defendant AFSCME owed Plaintiff a fiduciary duty to act at all times in good faith and in Plaintiff's best interests, and had a duty, among other things, to perform the services which they promised to Plaintiff.

130. Defendant AFSCME breached its fiduciary duties and obligations to Plaintiff by doing all of the acts and omissions as herein alleged. Among other things, Defendant AFSCME breached their duty by failing to investigate and represent Plaintiff against false accusations and her subsequent termination by Defendants the City of Gilroy and the Gilroy Police Department.

131. By reason of the conduct of Defendant AFSCME, Plaintiff has necessarily had to retain attorneys to prosecute the within action. Plaintiff therefore, is entitled to reasonable attorney's

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action. As a result of Defendant AFSCME's actions, Plaintiff has sustained economic damages to be proven at trial. As a further result of Defendant AFSCME's actions, Plaintiff has suffered emotional distress, resulting in damages according to proof.

132. The conduct of Defendant and/or its agents/employees as described herein, was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendant's actions. Defendant and its agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendant according to proof.

**WHEREFORE**, Plaintiff prays for judgment as set forth below.

## NINETH CAUSE OF ACTION
## NEGLIGENT AND INTENTIONAL MISREPRESENTATION
## (AGAINST DEFENDANT AFSCME)

Plaintiff re-alleges and incorporates by reference, each and every allegation contained above, inclusive, as though fully set forth herein.

133. Plaintiff was induced to believe that she would be receiving legal representation from Defendant AFSCME against false accusations and her subsequent termination by Defendant the City of Gilroy and Gilroy Police Department.

134. Mr. John Tucker, as the Business Agent on behalf of Defendant AFSCME, made numerous representations to Plaintiff and Attorney Rains that Defendant AFSCME would be providing legal counsel.

135. Plaintiff is informed and believes, and upon that basis alleges, that John Tucker knew the foregoing representation was false and untrue at the time it was made.

136. Plaintiff reasonably relied on the representations by terminating Ms. Rains' legal representation of her.

137. As a direct and proximate result of the unlawful conduct of Defendant, as alleged herein, Plaintiff has suffered and will continue to suffer loss, including personal injury, emotional

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

distress, loss of income, earnings and other economic loss and general damages in an amount as yet unascertained but subject to proof at trial.

138. In doing the acts alleged herein, Defendant, its directors, officers, managers, employees and agents, acted for the purposes of causing Plaintiff to suffer financial loss and severe emotional distress, or acted with fraud, oppression, despicable conduct or malice toward Plaintiff. The actions of Defendant's directors, officers, employees, managers and agents were performed in the course of their office, employment or agency with Defendant, and their actions were authorized, directed, condoned or ratified by Defendant. Defendant is liable to Plaintiff for exemplary and punitive damages in a sum according to proof.

139. The acts of Defendant as described herein were malicious, oppressive, fraudulent, despicable, with an improver and evil motive amounting to malice and in conscience disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages against Defendants, and each of them, in an amount according to proof.

**WHEREFORE,** Plaintiff prayers for relief as set forth below.

**TENTH CAUSE OF ACTION**
**NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(AGAINST ALL DEFENDANTS)**

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint.

140. Defendants engaged in outrageous conduct toward Plaintiff, with the intent to cause, or with reckless disregard for the probability of causing, Plaintiff to suffer severe emotional distress. To the extent that said outrageous conduct was perpetrated by certain employees and agents, the remaining employees and agents adopted and ratified said conduct with a wanton and reckless disregard of the deleterious consequences to Plaintiff.

141. At all relevant times, Defendants had the power, ability, authority, and duty to stop engaging in the conduct described herein and/or to intervene to prevent or prohibit said conduct.

142. Defendants are directly liable for the conduct of their owners, managers, directors, supervisors and other employees and agents.

143. As a proximate result of said conduct, Plaintiff has suffered and continues to suffer extreme mental distress, humiliation, anguish, and emotional and physical injuries, as well as economic losses, all to her damage in amounts according to proof.

144. The acts of Defendants as described herein were malicious, oppressive, fraudulent, despicable, with an improper and evil motive amounting to malice and in conscience disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages against Defendants, and each of them, in an amount according to proof.

145. Defendants are directly liable for the conduct of its owners, managers, directors, supervisors and other employees and agents.

**WHEREFORE**, Plaintiff prays for judgment as set forth below.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

**ELEVENTH CAUSE OF ACTION**
**BREACH OF WRITTEN AND IMPLIED-IN-FACT CONTRACT**
**(AGAINST ALL DEFENDANTS)**

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint.

146. An implied contract is "... in no less degree than an express contract." (*Friedman v. Friedman* (1993) 20 Cal.App.4th 876, 887.) The very heart of the implied in fact contract is the intent to promise. (*Id.*) The existence and terms of an implied in fact contract is based upon the manifested conduct of both parties. (*Id.*)

147. During Plaintiff's period of employment with Defendants the City of Gilroy and Gilroy Police Department, a written and implied in fact contract existed between both parties. Defendants made numerous oral and written promises to Plaintiff that she would be employed by Defendants.

148. As a member of Defendant AFSCME, a written and implied in fact contract existed between Defendant AFSCME and Plaintiff. Mr. John Tucker, as a Business Agent of Defendant AFSCME, made numerous oral and written promises to Plaintiff that she would receive union representation in the allegations and subsequent termination by Defendants the City of Gilroy and Gilroy Police Department.

149. As a result of Defendants' breach of a written or implied in fact contract with Plaintiff, Plaintiff has suffered lost income, general and special damages according to proof.

150. The conduct of Defendants and/or their agents/employees as described herein, was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendants according to proof.

151. Defendants are directly liable for the conduct of its owners, managers, directors, supervisors and other employees and agents.

**WHEREFORE**, Plaintiff prays for judgment as set forth below.

**TWELFTH CAUSE OF ACTION**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (AGAINST ALL DEFENDANTS)**

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint.

152. "The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 690.) "In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1154.)

153. Defendants the City of Gilroy and Gilroy Police Department have breached the implied covenant of good faith and fair dealing when they unilaterally modified their agreement with Plaintiff, by changing her schedule and requiring her to train three trainees back-to-back in a short period of time, while she was working on the CAD and GIS projects, as well as the annual Garlic Festival project, and subsequently terminating Plaintiff.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

154. Defendant AFSCME has breached the implied covenant of good faith and fair dealing when it unilaterally modified its commitment to provide legal representation to Plaintiff by rejecting Plaintiff's request for union representation regarding allegations and the subsequent termination of Plaintiff by Defendants the City of Gilroy and Gilroy Police Department.

155. Defendants' breach of their agreements frustrated Plaintiff's rights to the benefits of the agreements.

156. As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered lost income, general and special damages according to proof.

157. The conduct of Defendants and/or their agents/employees as described herein, was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendants according to proof.

158. Defendants are directly liable for the conduct of its owners, managers, directors, supervisors and other employees and agents.

**WHEREFORE**, Plaintiff prays for judgment as set forth below.

**THIRTEENTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. §1983)**
**(AGAINST DEFENDANTS CITY OF GILROY AND GILROY POLICE DEPARTMENT)**

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint.

159. 42 U.S.C. section 1983 provides, in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

160. As discussed in Ms. Rains' March 28, 2016 letter attached as Exhibit "B," Plaintiff received a written notice of the investigative interview of her by way of a letter dated September 1, 2015, from Defendants the City of Gilroy and Gilroy Police Department, which was personally served upon her by Captain Kurt Svardal. Plaintiff was not provided any information regarding the investigation that provided her with the ability to understand the nature of the investigation, or to prepare herself to address the questions posed to her.

161. Through counsel, Plaintiff asked the appointed investigatory attorney, Cynthia O'Neill, to provide her with information concerning the nature or content of the investigation, but her request was denied. This request was again raised at the outset of the interview and was refused once again by Ms. O'Neill.

162. Former Chief Denise Turner's assertion that Plaintiff was accorded due process pursuant to the Public Safety Officer's Bill of Rights is incorrect. At the Skelly hearing, Plaintiff clearly raised the affirmative defense of Denial of her Due Process as afforded by her non-sworn public employee classification. Defendants advised Plaintiff that the interrogation shall comply with The Public Safety Officers' Bill of Rights, Government Code Section 3300 et seq. Defendants refused to provide even basic information to allow Plaintiff to understand the nature of the investigation.

163. The conduct of Defendants and/or their agents/employees as described herein, was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendants according to proof.

164. Defendants are directly liable for the conduct of its owners, managers, directors, supervisors and other employees and agents.

**WHEREFORE**, Plaintiff prays for judgment as set forth below.

**PRAYER**

1. For general damages, according to proof, on each cause of action for which such damages are available;

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

2. For special damages, according to proof, on each cause of action for which such damages are available;
3. For punitive damages, according to proof, for each cause of action for which such damages are available;
4. For declaratory relief to declare Defendant's conduct to be in violation of Plaintiff's rights;
5. For injunctive relief to enjoin Defendant from engaging in such conduct;
6. For pre-judgment and post-judgment interests according to law;
7. For reasonable attorney's fees incurred in this action on those causes of action for which such fees are recoverable under applicable law;
8. For costs of suit incurred in this action; and
9. For such other and further relief as the court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action alleged herein in the Complaint for Damages.

Dated: August 7, 2017

Respectfully submitted,

Lori Costanzo
Lynn Toma
Andrea Justo
Attorneys for Plaintiff,
PATRICIA HARRELL

# Exhibit "A"



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING DIRECTOR KEVIN KISH

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www dfeh ca gov | email contact.center@dfeh ca gov

December 28, 2016

Patricia Harrell
9275 Jacaranda Way
Gilroy, California 95020

Via email: harrellz6@verizon.net

RE: **Request to Approve Complaint**
DFEH Matter Number: 813889-250763
EEOC Number:
Harrell / City Of Gilroy

Dear Patricia Harrell:

This notice confirms that you have filed an inquiry and have been interviewed by a Department of Fair Employment and Housing representative. You must approve, sign and return the complaint before it can be investigated. If you do not approve the language on the complaint, please do not sign the complaint; instead, contact me to discuss your concerns. **If you do not return the signed complaint within 10 days, your inquiry will be closed and no further action will be taken.**

Please note that the information you provided is subjected to the Department's privacy policy and the California Public Records Act, Government Code section 6250 et seq.

Thank you for your cooperation.
Sincerely,

Shahmaila Khan
Consultant II
916-585-8142
shahmaila.khan@dfeh.ca.gov

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

Complaint of
Patricia Harrell, Complainant.
9275 Jacaranda Way
Gilroy, California 95020

DFEH No. 813889-250763
EEOC No. {{
es_signer2_text}}

vs.

City Of Gilroy Respondent.
7351 Rosanna Street
Gilroy, California 95020

Joseph Deras, As an individual, Co-Respondent;
Denise Turner, As an individual, Co-Respondent;
Royce Heath, As an individual, Co-Respondent

THE PARTICULARS ARE:

1. I, Patricia Harrell, allege that I was subjected to Discrimination, Harassment, Retaliation by respondent, City Of Gilroy due to one or more Fair Employment and Housing Act protected bases: Age - 40 and over, Association with a member of a protected class, Race, Sex- Gender.

2. I was Asked impermissible non-job-related questions, Denied a good faith interactive process, Denied a work environment free of discrimination and/or retaliation, Denied employment, Terminated. The most recent harm occurred on or around March 21, 2016.

3. My belief is based on the following: I am a 52 year old woman of Hispanic and Native American heritage. I began working for respondent, Gilroy Police Department, in November, 1990. I was employed by the Department for over 25 years and worked as a police & fire dispatcher. I was terminated on March 21, 2016, three years before my full retirement age. During my years of employment, all of my yearly evaluations have been commendable and/or exceptional. I have been involved and/or responsible for many large projects within the organization.

Co-Respondent Turner, Complainants Police Chief, is the only other senior female in the department besides me. In recent years, co-respondents Deras and Heath, both police officers, moved up the ranks extremely fast, becoming supervisors, and I became their subordinate.

After Co-Respondent Deras, a male I believe to be in his 40s, became my supervisor he began treating me in a disparate manner from younger female employees under age 40. His communication and behavior with me indicated he did not like me as an older female with a close relationship with the other police officers I had planned to rotate to day shift with weekends off. Because I had seniority among the dispatchers I was entitled to first choice in shift assignments and had been working day for many years. However, Deras reassigned me to the less favorable night and weekend shifts, allowing younger female workers to select the week day shifts. Deras also overloaded me with dispatcher duties, training duties and overtime and when I complained that it was too much for one person to handle, I was subjected to discipline. I believe Deras engaged in a course of harassment designed to justify terminating me or to force me to quit and this discrimination was because of my age and sex.

During their careers, co-respondents Deras and Heath have made it very clear that they do not care for me, subjecting me to bullying tactics, making derogatory comments to others about me, changing my shifts, removing my job duties without explanation, not allowing me to attend various meetings I had previously attended, keeping me in the dark about new or changing policies, taking away my office space, ignoring emails I sent them and subjecting me to dirty looks and stares. I reported many of these issues to my captain at the time and was promised mediation, which never occurred. I also reported the issues to Human Resources and again was promised mediation, which never occurred.

I reported my belief that co-respondents were after me. My captain then retired and, within two months of his departure I was advised I was being made the focus of an Internal Affairs investigation and, within 6 months, I was terminated without due process (no verbal or written warning).

I believe my termination resulted from discrimination against me by co-respondents Deras and Heath and co-respondent Turner failed to protect me from the discrimination and permitted my discriminatory termination. Because I was terminated before my full retirement age, I have been forced to take a reduced retirement pay and have been unable to pass background checks to obtain another law enforcement job with pay comparable to the pay I earned from respondent, with over 25 years of service. Respondents discrimination has caused me severe financial hardship and long-term loss of retirement pay and benefits.

VERIFICATION

I, **Patricia Harrell**, am the **Complainant** in the above complaint. I have read the above complaint and know its contents. I declare under penalty of perjury under the laws of the State of California that the above is true and correct of my own knowledge, except as to those matters alleged on information and belief, which I also believe to be true.

Signature of Complainant or Complainant's Legal Representative: Date:

Patricia Harrell

Patricia Harrell (Dec 29, 2016)

Dec 29, 2016

**Gilroy, CA**
**Patricia Harrell**



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING DIRECTOR KEVIN KISH

2218 Kausen Drive Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www dfeh ca gov | email contact center@dfeh.ca gov

May 18, 2017

Patricia Harrell
9275 Jacaranda Way
Gilroy, CA 95020

RE: Request to Approve Amended Complaint
DFEH Matter Number: 813889-250763
EEOC Number: 37A-2017-00672-C
Harrell / City of Gilroy

Dear Patricia Harrell:

This notice confirms that you have filed a complaint and have been interviewed by a Department of Fair Employment and Housing representative. Please read the complaint carefully and immediately approve it. You must approve the changes made to your complaint before it can be investigated. If you do not approve the language on the complaint, please do not sign the complaint; instead, contact me to discuss your concerns. Please read the complaint carefully and follow the instructions provided. **Please return the signed amended complaint within 10 days.**

Please note that the information you provide is subject to the Department's privacy policy and the California Public Records Act, Government Code section 6250 et seq.

Thank you for your cooperation.

Shahmaila Khan

Shahmaila Khan
Consultant II
916-585-8142
shahmaila khan@dfeh.ca.gov

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

Complaint of
Patricia Harrell, Complainant.
9275 Jacaranda Way
Gilroy, California 95020

DFEH No. 813889-250763
EEOC Number: 37A-2017-00672-C

vs.

City of Gilroy Respondent.
7351 Rosanna Street
Gilroy, California 95020

Joseph Guzynski, As an individual, Co-Respondent; John Tucker, As an individual, Co-Respondent; Scott Smithee, As an individual, Co-Respondent; Steve Ynzunza, As an individual, Co-Respondent; LeeAnn McPhillips, As an individual, Co-Respondent; Joseph Deras, As an individual, Co-Respondent; Denise Turner, As an individual, Co-Respondent; Royce Heath, As an individual, Co-Respondent

THE PARTICULARS ARE:

1. I, Patricia Harrell, allege that I was subjected to Discrimination, Harassment, Retaliation by respondent, City Of Gilroy due to one or more Fair Employment and Housing Act protected bases: Age - 40 and over, Engagement in Protected Activity, Sex- Gender.

2. I was Asked impermissible non-job-related questions, Denied a good faith interactive process, Denied a work environment free of discrimination and/or retaliation, Denied employment, Denied reinstatement, Terminated. The most recent harm occurred on or around March 21, 2016.

3. My belief is based on the following: I am a 52 year old woman of Hispanic and Native American heritage. I began working for respondent, Gilroy Police Department, in November, 1990. I was employed by the Department for over 25 years and worked as a police & fire dispatcher. I was terminated on March 21, 2016, three years before my full retirement age. During my years of employment, all of my yearly evaluations have been commendable and/or exceptional. I have been involved and/or responsible for many large projects within the organization. Co-Respondent Turner, Complainants Police Chief, is the only other senior female in the department besides me. In recent years, co-respondents Deras and Heath, both captains, moved up the ranks extremely fast, becoming supervisors, and I became their subordinate. Respondent Gilroy Police Department has allowed a culture of sexual exploits with multiple partners, groping, exposure of genitals, and sexual harassment on and off duty to thrive. Heath recruiting other officers to partake in sexual activity with his wife, Andrea Arthur, is just one of many examples of inappropriate behavior. After Co-Respondent Deras, a male I believe to be in his 40s, became my supervisor he began treating me in a disparate manner from younger female employees under age 40. My refusal to partake or condone this culture of sexual exploits are additional reasons for Gilroy Police Departments disparate treatment. His communication and behavior with me indicated he did not like me as an older female with a close relationship with the other police officers I had planned to rotate to day shift with weekends off. Because I had seniority among the dispatchers I was entitled to first choice in shift assignments and had been working day for many years. However, Deras reassigned me to the less favorable night and weekend shifts, allowing younger female workers to select the week day shifts. Deras also overloaded me with dispatcher duties, training duties and overtime and when I complained that it was too much for one person to handle, I was subjected to discipline. I believe Deras and others within the Gilroy Police Department have engaged in a pattern of discrimination, harassment and retaliation, creating lies to terminate me. During their careers, co-respondents Deras and Heath have made it very clear that they do not care for me, subjecting me to bullying tactics, making derogatory comments to others about me, changing my shifts, removing my job duties without explanation, not allowing me to attend various meetings I had previously attended, keeping me in the dark about new or changing policies, taking away my office space, ignoring emails I sent them and subjecting me to dirty looks and stares. I reported many of these issues to Captain Smithee, my captain at the time, and was promised mediation, which never occurred. I also reported the issues to Human Resources and again was promised mediation, which never occurred. I reported my belief that co-respondents were after me. My captain then retired and, within two months of his departure I was advised I was being made the focus of an Internal Affairs investigation and, within 6 months, I was terminated without due process (no verbal or written warning). Because I was terminated before my full retirement age, I have been forced to take a reduced retirement pay and have been unable to pass background checks to obtain another law

enforcement job with pay comparable to the pay I earned from respondent, with over 25 years of service. Respondents discrimination has caused me severe financial hardship and long-term loss of retirement pay and benefits.

VERIFICATION

I, **Patricia Harrell**, am the **Complainant** in the above complaint. I have read the above complaint and know its contents. I declare under penalty of perjury under the laws of the State of California that the above is true and correct of my own knowledge, except as to those matters alleged on information and belief, which I also believe to be true.

Signature of Complainant or Complainant's Legal Representative: Date:

Andrea Justo (May 18, 2017) May 18, 2017

**Gilroy, CA**
**Patricia Harrell**

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING** DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

May 24, 2017

Patricia Harrell
9275 Jacaranda Way
Gilroy, CA 95020

RE: **Notice of Case Closure and Right to Sue**
DFEH Number: 813889-250763
EEOC Number: 37A-2017-00672-C
Patricia Harrell / City of Gilroy, et al.

Dear Patricia Harrell
The Department of Fair Employment and Housing (DFEH) has closed your case for the following reason: Withdrawn – Intend to File a Lawsuit.

**This is your Right to Sue Notice.** According to Government Code section 12966, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. This is also applicable to DFEH complaints that are filed under, and allege a violation of, Government Code section 12948, which incorporates Civil Code sections 51, 51.7, and 54. The civil action must be filed within one year from the date of this letter. However, if your civil complaint alleges a violation of Civil Code section 51, 51.7, or 54, you should consult an attorney about the applicable statutes of limitation.

Please note that if a settlement agreement has been signed resolving the complaint, you may have waived the right to file a private lawsuit. Should you decide to bring a civil action on your own behalf in court in the State of California under the provisions of the California Fair Employment and Housing Act (FEHA) against the person, employer, labor organization or employment agency named in your complaint, below are resources for this.

**Finding an Attorney**
To proceed in Superior Court, you should contact an attorney. If you do not already have an attorney, the organizations listed below may be able to assist you:

- The State Bar of California has a Lawyer Referral Services Program which can be accessed through its Web site at www.calbar.ca.gov or by calling (866) 442-2529 (within California) or (415) 538-2250 (outside California).

- Your county may have a lawyer referral service. Check the Yellow Pages of your telephone book under "Attorneys."

**Filing in Small Claims Court**
- The Department of Consumer Affairs (DCA) has a publication titled "The Small

Claims Court: A Guide to Its Practical Use" online at of "The Small Claims Court: A Guide to Its Practical Use" online at http://www.dca.ca.gov/publications/small_claims/. You may also order a free copy of "The Small Claims Court: A Guide to Its Practical Use" online, by calling the DCA Publication Hotline at (866) 320-8652, or by writing to them at: DCA, Office of Publications, Design and Editing; 1625 North Market Blvd., Suite N-112; Sacramento; CA; 95834.

- The State Bar of California has information on "Using the Small Claims Court" under the "Public Services" section of its Web site located at www.calbar.ca.gov.

Sincerely,

Shahmaila Khan
Consultant II
916-585-8142
shahmaila.khan@dfeh.ca.gov

cc: Hirschfeld Kraemer LLP
Jayne Chipman
505 Montgomery Street 13th Floor
San Francisco, CA 94111

Costanzo Law Firm
Andrea Justo
111 North Market Street, Suite 910
San Jose, CA 95113

City of Gilroy
Joseph Deras
7351 Rosanna Street
Gilroy, CA 95020

American Federation of State, County & Municipal Employees (AFSCME)
Joseph Guzynski
1515 West 190th St., Suite 560
Gardena, CA 90248

City of Gilroy
John Tucker
7351 Rosanna Street
Gilroy, CA 95020

City of Gilroy
Scott Smithee
7351 Rosanna Street
Gilroy, CA 95020

City of Gilroy
Steve Ynzunza
7351 Rosanna Street
Gilroy, CA 95020

City of Gilroy
LeeAnn McPhillips
7351 Rosanna Street
Gilroy, CA 95020

City of Gilroy
Joseph Deras
7351 Rosanna Street
Gilroy, CA 95020

City of Gilroy
Denise Turner
7351 Rosanna Street
Gilroy, CA 95020

City of Gilroy
Royce Heath
7351 Rosanna Street
Gilroy, CA 95020

# Exhibit "B"

Law office of Kathryn A. Rains
2300 Contra Costa Blvd. Suite 500
Pleasant Hill, CA 94523
Tel. (925) 609-1699
Cell (925) 595-1091
Fax (925) 609-1690
Kathyrainslaw@aol.com

**VIA FACSIMILE and US Mail**
March 28, 2016

LeeAnn McPhillips
Human Resource Director
City of Gilroy
7351 Rosanna St
Gilroy, CA 95020

RE: **Notice of Appeal from Termination. Gilroy Police Department Senior Dispatcher, Patricia Harrell.**

Dear Ms. McPhillips

On behalf of my client, Ms. Patricia Harrell (hereafter referred to as Grievant) I write to appeal the imposed termination of my client and request a hearing with the City of Gilroy Personnel Board as provided by City of Gilroy Human Resources Rules and Regulations, Section VI.

This appeal is based upon the decision of Gilroy Police Chief, Denise Turner to terminate my client by way of written notice that was served upon her on March 21, 2016.

At the onset of this written appeal, I want to note that as per City HR rules, we are addressing our response to this appeal within the 10 day timeframe outlined within section VI. I take exception to the fact that Chief Turner has allowed herself over 6 weeks to respond to our Skelly hearing that was held on February 4, 2016 and provide her Notice of Termination, and now we are required to reply back with Grievant's appeal to the imposed termination and provide a detailed response to all charges to preserve her appeal and within only 10 days.

This process is consistent with the unfair and biased treatment Grievant has experienced since the inception of her being noticed of the administrative investigation when she was denied basic due process of being afforded information concerning the nature of the investigation itself. The City took over 8 months to conduct to its investigation that resulted in Chief Turner recommending the

termination of Grievant to which Grievant was expected to respond within 8 days. Now once again, the City and their hired counsel are allowed unlimited time to conduct their response to issues raised at Skelly and the City affords Grievant 10 days to comply with their guidelines for Appeal.

From the onset of Ms. Harrell's notice of this investigation, to the proposed termination, Grievant has been subjected to unfair and biased treatment.

At the February 4th Skelly hearing, Grievant and her counsel provided over 4 hours of testimony refuting the allegations listed in Chief Turner's proposed termination. Grievant renews each and every one of those issues again here by way of this appeal and incorporates all previously stated defenses into this appeal. Chief Turner preserved a recording of all discussions presented and provided a copy to Grievant that can be made available to you upon request.

As required, I will list all affirmative defenses below and further incorporate all affirmative defenses previously raised at Skelly. In addition to any resolution of the imposed discipline in this matter, Grievant will be seeking full back pay for the violations of her constitutional right to due process.

**Grievant's Response to Chief Turner's findings and conclusions.**

Chief Turner's Notice of Termination is a carbon copy of her Proposed Notice of Termination. It basically follows the cut and paste "throw in the kitchen sink" style approach we seem to be routinely seeing in City of Gilroy termination cases. To respond to each and every allegation on this style of disciplinary approach would take months rather than days to respond. In response, what I have attempted to identify from Chief Turners Notice, Grievant denies any and all allegations of misconduct as alleged in Chief Turner's March 21st Notice of Termination.

Chief Turner's letter begins with issues we will address under affirmative defenses to which Grievant renews all defenses and supporting documentation she provided at Skelly.

**Relevant Policies, Rules and Regulations:**

Pages 2-5 of the general manual of rules violations will be discussed as they relate to evidence presented by The City. Absent facts to identify these violations, grievant denies all violations.

With regards to violations specifically attributed to training with witnesses Russell, Huntley and Duran, Grievant provides the following:

**Allegations of Untruthfulness.**

Grievant denies any untruthfulness during this investigation. It is well documented and was addressed at the onset of the February 4th Skelly hearing that Grievant was not provided with any information about the nature of the investigation before or during the investigation. As discussed below under affirmative defenses, Grievant was denied even the most basic premise of Due Process and Fundamental Fairness from the onset of this investigation. She was not provided any information as to the nature of the investigation, despite numerous requests by her counsel both before and at the onset of the 6 hour investigatory interview. Her notice of Administrative Investigation, (attached here as **Attachment A,**) clearly shows the lack of any meaningful information that would have allowed her a fair opportunity to prepare for the interview so as to provide clear answers to the best of her abilities. Chief Turner has relied upon Grievent's "long pauses" before answering questions to infer that Grievant was dishonest in providing testimony to which she knew nothing about prior to the onset of the interview.

**Inappropriate Treatment of Trainees**

**Hostility Toward Trainees From The Outset of Training:**

Grievant denies any deliberate hostility toward trainees during any time that she was training or involved with any of her trainees. As noted in the investigative report, several of these trainees came to GPD with previous training and had an easier time adjusting to training and learning GPD procedures. Given that GPD has been unable to maintain or recruit training officers, as admitted by the Chief herself, GPD had only two experienced trainers, Grievant and Supervisor Ynzunza. Both Grievant and Ynzunza had other responsibilities in addition to training back-to-back trainees. The very nature of their impossible task created added stress and inadequate training conditions. Deras was aware that Grievant previously expressed her objection to having back-to-back trainees at the onset the imposed training through her chain of command. Her recommendations to take stagger the training was ignored and she did the best she could under the impossible conditions placed upon her at that time.

A review of Grievant's 14 year tenure as a trainer clearly demonstrates that she has been an excellent trainer and has been heavily relied upon by GPD as it's primary trainer.

**Aggressive and Volatile Training Approach:**

A review of witness interviews clearly shows that GPD Captain Deras was aware of complaints from one trainees as early as April 2014 immediately after Grievant completed training with her first of the three assigned trainees. Yet Dares, who already knew Grievant was over burdened, assigned two more trainees to Grievant over her objection, all the time aware of her other assignments and supervision

responsibilities. Any review of her Grievant's training during this time must be based upon the impossible situation she was forced to step into and her numerous attempts to resolve or unload some of her caseload to meet the standards in her training that she has routinely demonstrated throughout her tenure as GPD's primary trainer.

**Yelling At, Refusing to Assist, and Giving Conflicting Instructions to Trainees:**

At Skelly, Grievant explained in detail that trainers need to be able to work with trainees without having to be directly assigned to work a dispatch channel in order to effectively train and focus attention to the trainee. In all circumstances during her time with these three trainees, Grievant was required to work a channel and handle all incoming calls for that channel while at the same time try to find time to focus on trainees. Often due to GPD high call volume, her entire shift would be consumed by taking emergency calls without a break or any time for relief, to focus upon her trainee. Often, as stated by Grievant and Supervisor, Ynzunza, where call volume was high, all they could do was assign trainees to read training manuals and familiarize themselves with city map and geographic locations. A review of Grievant's testimony at Skelly provided descriptive detail of the impossible training conditions presented due to staffing shortages and over burdening Grievant with assignments that demanded her time elsewhere.

*It should be noted that since placing Grievant on administrative leave, GPD has now assigned two supervisors to do the job that one was doing prior leaving. In addition, Chief Turner has implemented changes within the Communications Center to improve the impossible staffing and supervision problems Grievant was forced to work under.

**Threatening Trainees and Coworkers To Keep Quiet:**

Grievant provided in detail at Skelly, (and will provide again to The Personnel Board) that prior to her receiving the new trainees, she was the subject of harassment by command staff to which she made a formal complaint to The Human Resources Director. Grievant was the target of harassment from Captain Deras and Sgt. Royce and she feared further retaliation from command staff for initiating a complaint. She expressed concern to coworkers and trainees about the complaint she had recently made to HR and feared further retribution from her command staff. At no time did she make any threats to trainees or coworkers. She made reference to her fear of retribution from command staff and cautioned co workers about her concern that her supervisors were looking to retaliate against her for initiating the complaint.

**Demeaning Trainees in Front of Others:**

Grievant explained that she never intentionally engaged in demeaning any employees and especially not trainees. At times, she did have to address training deficiencies and counsel trainees on events that occurred during a call that needed correction. Grievant didn't have the opportunity to address trainees in private as she was on a radio channel during training. As with training for police officers, dispatchers are first responders and often handle calls that are emotionally charged and volatile. At times this volatility can carry over to training where urgency of a call dictates immediate action.

GPD statistics and other regional statistics support a finding that more trainees fail to complete training than those who successfully pass the training and remain within the field. According to testimony of veteran PSA Carmen Carpenter, this failure rate is more often than not is attributed to the nature of the job and a trainee's inability to deal with stressful nature of the job itself. As noted by several witness statements from GPD senior dispatchers, the environment within dispatch is stressful, and many trainees do not succeed. This was clear with trainee Duran from the onset of her training and throughout her training with grievant and two other trainers.

Veteran PSA Carmen Carpenter provided testimony that Grievant was rude to trainee Huntley, yet she failed to act on report the "rudeness" until 5 months after she witnessed the alleged rude conduct, and only after she learned from trainee Huntley that Huntley had been engaging in ongoing dialog with Captain Deras and reporting to him, activity she observed and at times, merely overheard second hand from within the Communication Center. Only after learning from trainee Huntley herself that she had made a complaint to Deras, did Carpenter decide to report the alleged rude conduct she claims to have observed months prior.

A review of PSA Carpenter's 2.5 hour interview provides valuable insight into the history of GPD in general and longstanding dissatisfaction within the Communication Center which has contributed to staff shortage, the lack of dispatchers who are willing to train and general dysfunction within dispatch due to circumstances unrelated to Grievant. Carpenter noted that GPD has lost 23 trainees in 5 years, as most can't satisfactorily complete their training program.

Carpenter trained Grievant and considered Grievant to be "an excellent trainer." She further noted that Grievant has been unhappy in recent times due to her fear that "people were out to get her." She was also aware that Grievant was unhappy and struggling with the fact that "three trainees were assigned to her with out a break."

**Response to Issues Raised At Skelly Hearing Regarding Inappropriate Treatment of Trainees.**

**High amount of Overtime:**

Chief Turner admitted to reviewing the extensive amount of mandatory overtime Grievant has worked and noted in detail Grievant's mandatory overtime that she and other dispatchers worked. In her footnote, she states Supervisor Ynzunza had "nearly twice the amount of overtime in 2014/2015." She fails to mention that Ynzuza didn't have the responsibility of rewriting the com-center CAD manual, nor did he routinely have back to back trainees while performing his general duties as a supervisor. Grievant explained that many of her extra duties were actually Ynzuza's responsibilities but Ynzunza assigned many of his supervisorial tasks to Grievant. Since Grievant's departure, Chief Turner has rectified this problem by adding a second Captain to the unit and removing Ynzunza from training and general dispatch supervision to allow him to complete the implementation of the CAD system Grievant was handling in addition to her training and other duties.

As established by Chief Turner, Grievant and other dispatchers worked an excessive amount of overtime because of GPD's high turnover rate of dispatchers for various reasons and the staffing shortages from that turnover.

Excessive overtime has largely contributed to general dissatisfaction within the Communication Center. Veteran PSA's refuse to participate in training as noted by several witness PSA's who expressed in their interviews their unwillingness to become trainers because of the stress and demands of the job.

Grievant has been the only consistent trainer in GPD recent history and has been overburdened with responsibilities not only as a trainer but as a Supervisor, routinely doing job assignments that are categorized as duties of Supervisor Ynzunza in addition to being responsible for the updates of the communications manual and the CAD implementation project. None of these duties are put on hold when she is given trainees. Chief Turner's attempts to minimize Grievant's claim of stress due to overtime and over-burden of too many job responsibilities is inconsistent with her recent action to move around command staff and reorganize job responsibilities for Supervisor Ynzunza.

**Back-to-Back Trainees**

Chief Turner's response speaks for itself and supports Grievant's objection and concern in anticipation of her upcoming assignments to train three trainees in succession without a break. Grievant knew it would be impossible to take on the added responsibility her Senior status required and continue to perform the added duties of the CAD project and general supervision delegated to her by Ynzunza. Grievant's objection was ignored by Deras and Ynzunza and her suggestions the

trainees be staggered were ignored. Grievant anticipated the unworkable situation, and attempted to offer a viable solution which was ignored, forcing her to work overtime to complete the assignments she is currently under deadline to complete. Chief Turner identifies but cannot defend these statistics by stating, "staff was working diligently to hire dispatchers to improve the staffing levels in the Communications Center to reduce overtime for the members." So the ends justify the means? Grievant had been forced to work graveyard shift, over her objection, despite her senior status in seniority. She had to work overtime just to complete her general duties and suddenly she is burdened with three trainees back to back in addition to her already excessive duties. She admitted to being stressed and suffering ongoing health problems with high blood pressure due to her stressful working conditions.

Unlike other veteran dispatchers who simply refused to train or take on added responsibilities, Grievant has routinely and enthusiastically taken on supervisorial duties in addition to her general duties as a Senior PSA.

Chief Turner and her command staff have failed to respond to the staffing shortage in a workable manner. To expect Grievant to take the responsibility for what has been a disaster in the making for many years, with a clear history of dissatisfied employees and overworked staff is nothing other than a deflection of the inadequacies of the current police department command staff. Ineffective leadership and lack of supervision are to blame to what has occurred on her watch.

The Chief's calculations support Grievant's claim of excessive mandatory overtime and unrealistic working conditions. The Chief's own findings support what Grievant explained to her at Skelly about the stressful, unworkable conditions that were forced upon Grievant when she was assigned three trainees back-to back over her objection and without relief of her other duties or time in between training.

**High Call Volume on Graveyard Shift.**

Statistics are available and will be provided at the hearing to support this claim. Chief Turner accuses Grievant of being "misleading" for her implying that the high call volume on graveyard shift largely contributed to her inability to effectively train trainees without interruption, by referencing that on two occasions over the course of 6 months, relief was available from a part time dispatcher. This information has not been provided nor was it part of the investigation. A more effective method available to the Chief should be the call logs of all shifts to compare call volumes. To simply state that on two occasions while with one of her three trainees there was the availability of a part time dispatcher offers nothing to support her position.

**Inability to Take Time Off Due to Training**

Grievant noted that she did take her scheduled vacation and coordinated her with her Supervisor to account for her current assigned trainee while away on her

previously scheduled vacation. Chief Turner failed to mention that some of her "vacation time" was spent completing assigned tasks for the CAD manual that she was additionally responsible for completing and under a deadline to complete.

**Medical Issues**:

As indicated at Skelly, Grievant can and will provide medical documentation of her ongoing medical issues that she was experiencing and sought medical treatment for during the time she was training. To date, Chief Turner has not requested any medical documentation. Grievant will provide medical documentation in support of her claim at the time of the hearing.

**Unanswered Communications:**

Grievant has provided documentation to Chief Turner of the numerous attempts she made to communicate with her chain of command regarding the ongoing staffing and training issues. Grievant added, but Chief Turner failed to address, that Grievant believed Captain Deras intentionally excluded her from communications involving matters she was assigned due to the well known hostility between them. Chief Turner's claim that in her view, the email exchange was "Consistent with the normal flow of information and response in a busy workplace," fails to address Grievant's assertion that Captain Deras was intentionally excluding her from communication, which impacted her ability to effectively carry out her duties.

**Postponed Training and Lack of Evaluations:**

There is no dispute here. As admitted by the Chief and as records support, Supervisor Ynzunza has failed to assure that his personnel have received the required POST mandated training as supported by Chief Turner's findings. Further, as required by GPD manual of rules and regulations, All Employees Shall be Evaluated Annually. Chief Turner has concluded that Grievant's last performance evaluation was performed in 2010. But Chief Turner finds that a lack of evaluations have no bearing on Grievant's conduct. However, as Chief Turner notes, "steps have been taken to insure performance appraisals for all staff, department-wide are up to date." Considering Grievant hadn't received an evaluation in six years, one would anticipate that mandatory overtime has increased dramatically at GPD if all employees are now up to date on receipt of their performance evaluations.

Evaluations serve the purpose of identifying performance deficiencies and providing notice to employees that their performance needs improvement. Further, timely performance evaluations are intended to detect problems and receive feedback from employees to best insure smooth order in the workplace.

This claim is undisputed and supports Grievant's position that Supervisor Ynzunza and Chief Turner's command staff have failed maintain POST mandated training for

employees and to provide annual performance evaluations to assure to good working order within the organization.

Grievant's general dissatisfaction of the way she has been treated as an employee of the Gilroy Police Department was provided to Chief Turner in support her claims that the Communication Center has been dysfunctional and not operating in a manner consistent with State mandated nor department standards for a long time. Grievant expressed further that she feels retaliated against for expressing her concerns to Human Resources in previous occasions and believes that she has been required to work under impossible working conditions largely due to the lack of supervision and support from Supervisor Ynzunza and Captain Deras.

Chief Turner admitted to the departmental failures and has taken measures to correct them largely because Grievant has brought them to her attention.

Grievant has been a loyal member of the Gilroy Police department and has served as a police dispatcher and Senior Police Dispatcher for over 25 years. She has been a Senior PSA and trainer for over 14 years. In the last 6 months of her 25 year history, during a time stressful time, Grievant was forced to take on training responsibility over her objection of 3 trainee's back-to-back while remaining responsible for her general duties as a Senior Dispatcher and the added responsibility of having to do some of her supervisor general duties.

In addition she is in charge of compiling all required date for the new CAD system soon to be implemented. Grievant expressed clearly that she was undergoing stress, suffering medical problems associated with her stress and openly expressed her dissatisfaction and inability to take on the added responsibility of three new trainees at that time. Yet, despite a lack of support, disregard for training and any evaluations or opportunity to discuss her dissatisfaction, Grievant took on the added responsibility increasing the burden's she already had to endure. No other dispatchers have volunteered to do half of what Grievant does and with the exception of one dispatcher (who was pressured to take on a trainee only recently) no other dispatchers were willing to train.

Chief Turner has elected to completely ignore Grievant's legitimate defenses and mitigating circumstances in this matter in order to avoid bringing negative attention to herself over her utter failure to assure that her department was operating up to standards and that her employees were being treated fairly.

It appears to be the case that when Chief Turner wants to get rid of a loyal employee who is viewed by a few members of her command staff as a cancer within her organization, she can hire outside counsel to comb over Departmental and City rules and regulations and to craft and orchestrate the predetermined termination of an employee, yet she can't seem to adhere to nor follow Department and City rules and regulations herself.

As indicated at the onset of my letter, any and all defenses raised at the February 4th Skelly are to be incorporated into his appeal as nothing Chief Turner has provided in her Notice of Termination would cause Grievant to change her position on this unwarranted termination to which the following affirmative defenses apply:

**Affirmative Defenses:**

1. **Denial of Due Process**

Grievant received written notice of the investigative interview which lead to this action, by way a letter dated September 1, 2015 which was personally served upon her by Captain Kurt Svardal. That notice, attached to this letter as Attachment A, advised Grievant that she was in possible violation of City Human Resource rules and Regulations and City of Gilroy and Gilroy Police Department Policies including but not limited to, the City of Gilroy and Gilroy Police Department discrimination and harassment prevention policies.

Grievant was not provided any information regarding the investigation that could provided to her any meaningful opportunity to know of the nature of the investigation or to prepare herself to address the questions presented to her.

Through counsel, Grievant asked the appointed investigator, Attorney Cynthia O'Neill to provide her with information concerning the nature or content of the investigation and her request was denied. This request was again raised at the onset of the interview and was refused once again by Ms. O'Neill.

Grievant was denied from the onset of this investigation any opportunity to know anything about the investigation or complaint she was being asked to address.

Chief Turner's assertion that Grievant's claim was based upon her denial under the Public Safety Officer's Bill of Rights is incorrect and misstates Grievant's testimony. At Skelly, Grievant clearly raised the affirmative defense of Denial of her Due Process as afforded by her non-sworn public employee classification. In addition to that claim Grievant also brought to Chief's Turner's attention (by way of Attachment B), an Administrative Advisement, from a previous administrative investigation served upon her in 2008. At that time, the City sent notice addressed to Senior PSC Patricia Harrell by way of an Administrative Admonishment, which notified her that she was the subject of an investigation which may lead to punitive action and clearly defined the nature of the investigation, in relation to a specific event which gave her reference, to allow her to respond on an informed basis to the questions posed to her in the investigation. Additionally, as noted on page 2 of Attachment B, the City advised Grievant that the interrogation shall comply with The Public Safety Officers' Bill of Rights, Government Code section 3300 et sec.

Grievant raised the issue that in past practice, (when the department intended to conduct a fair investigation), non-sworn employees were afforded Due Process that

went beyond what was dictated by way of her non-sworn status. Yet in this case, the City refuses to provide even basic information to give Grievant any opportunity to know of the nature of the investigation.

**The Investigation Lacks Objectivity and Unfairly Targets Grievant Harrell**

The facts documented in the City's investigation prove that the City knew of complaints received from Trainee's concerning Grievant dating back to April of 2014, and still without counseling or direct inquiry with Grievant the department assigned two more trainees to her over the next 6 months.' Rather than directly inquire or counsel Grievant about the alleged misconduct, (which was inconsistent with her previous 14 years of training), The City elected to push two more trainees on Grievant and secretly document further complaints in order to bring about a case to support termination.

At no time in during the 6 months that Grievant trained the three new trainees did City do anything to intervene, inquire with Grievant or counsel Grievant about her treatment of trainees. By its actions The City intentionally put trainees at risk and failed to act in a timely manner to intervene or correct problems identified early in the course of receiving complaints.

This investigation was initiated and originally conducted by Captain Deras. As mentioned previously, Grievant has made complaints in recent past to The Human Resource director concerning conduct she believed to be harassment by Captain Deras. That case was pending with Human Resources at the time Captain Deras initiated his investigation of Grievant. It was only after City received a complaint from The Department of Fair Employment and Housing concerning former trainee Guadeloupe Duran, that the City hired outside counsel to take over the investigation.

**City put Grievant in a Position to fail by ignoring her requests not to have Trainees.**

As noted, Grievant expressed her dissatisfaction of having to take on three trainees back-to-back in a short period of time and while under time constraints to complete a time sensitive CAD implementation along with attending to her increased Supervisorial duties.

City was aware of the already stressful workload Grievant was under and forced her into the impossible position of having to take on more than she knew she could reasonably handle.

When City first learned that Grievant was struggling and displaying behavior inconsistent with their training standards and her previous training abilities, they chose to sit on their hands and allowed this behavior to continue to in order to craft cause for termination.

**City deliberately set Grievant up to fail by ignoring her complaints of harassment by her supervisor, Captain Deras.**

Grievant also provided evidence at Skelly in support of the fact that she had met with The Human Resources Director prior to the onset of this investigation and informed her of treatment she was subjected to which she believed to intentional harassment by Captain Deras and Sgt. Royce Heath. Grievant was told by her Captain, Scott Smithee, that her complaint would be scheduled for mediation in hopes to resolve issues between her and her command staff. Grievant's complaint was never addressed and went unresolved after Captain Smithee retired. Captain Deras was assigned to replace Captain Smithee's vacated position and became Grievant's supervisor.

Since that time, Captain Deras has made no effort to improve his relationship with Grievant nor has any further inquiry been made by Human Relations or from Chief Turner to assure Grievant had resolved her complaint.

**Conclusion:**

At the February 2nd Skelly, Grievant Harrell, honestly and accurately expressed her honest opinions as to what attributed to her performance as a trainer with her past three trainees. In the four hours of discussion, Grievant Provided Chief Turner with insight into the lack of supervision within the Communications Center to which, post Skelly, Chief Turner has acted upon to improve. Supervisor Ynzunza has been relieved of his supervisorial duties within the Communication Center and another Captain has been brought in to the unit.

Chief Turner has admitted to the failures within her department in maintaining POST mandated training requirements for Grievant and further admitted to her departments failure to adhere to their own mandated annual performance evaluation policy, thus denying her employees meaningful opportunities to know if their performance is not meeting standards and allowing for correction prior to the imposition of disciplinary action.

By allowing her department to fail to live up to the obligations owed to its employees, she has created an environment that fosters dissatisfaction amongst her employees and that has prevented her employees from addressing their grievances or concerns about workload, mandatory overtime and stressful working conditions.

Chief Turner has completely disregarded Grievant's insistence that stressful working conditions, failures by her supervisors to resolve overloaded work schedules and grievances and to effectively communicate with her and respond to inquiries have attributed to her frame of mind when training her recent trainees. Chief Turner has further dismissed Grievant's documented medical conditions that Grievant and her doctors have attributed to her stressful working conditions.

The allegations of mistreatment of trainees and all of the rules and regulations Chief Turner has thrown at Grievant to support her position to terminate her are a direct result of Chief Turner's own failure to insure that her department was operating in the standards required by law and by its own rules and regulations.

For the all of the above referenced reasons and the reasons stated previously in the recorded Skelly hearing of February 4, 2016, Grievant's termination is unwarranted and without merit taking into consideration her previous disciplinary history, her unquestioned 14 years tenure as a Senior PSA and trainer and over 25 years of dedicated service to the Gilroy Police Department.

As indicated above, if for some reason you find that the recorded Skelly hearing is not available to you from GPD, I will be happy to provide a copy to you to incorporate with this appeal.

Sincerely,

Kathryn A. Rains
Attorney for Grievant
Patricia Harrell

Attachments:

A. Notice of Administrative Investigation
B. 2008 Notice of Administrative Investigation.

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address)
Lori J. Costanzo, SBN 142633, Lynn Toma, SBN 100384, Andrea Justo, SBN 310122
Costanzo Law Firm, APC
111 West Saint John Street, #700
San Jose, CA 95113
TELEPHONE NO.: 408-993-8493 FAX NO.: 408-993-8496
ATTORNEY FOR (Name): Plaintiff Patricia Harrell

FOR COURT USE ONLY

ENDORSED
2017 AUG -7 P 12:10
CLERK OF THE SUPERIOR COURT COUNTY OF SANTA CLARA
V.Taylor

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME:

CASE NAME:
PATRICIA HARRELL v. CITY OF GILROY, et al.

## CIVIL CASE COVER SHEET

[✔] Unlimited (Amount demanded exceeds $25,000)
[ ] Limited (Amount demanded is $25,000 or less)

**Complex Case Designation**
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 17CV314125
JUDGE:
DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[✔] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✔] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [✔] monetary b. [✔] nonmonetary; declaratory or injunctive relief c. [✔] punitive
4. Number of causes of action *(specify)*: 13
5. This case [ ] is [✔] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 08/07/2017
ANDREA JUSTO
(TYPE OR PRINT NAME)
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.



Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): Lori J. Costanzo, SBN 142633; Lynn Toma, SBN 100384; Andrea Justo, SBN 310122<br>Costanzo Law Firm, APC<br>111 West St. John Street, Suite 700<br>San Jose, CA 95113<br>TELEPHONE NO.: 408-993-8493 FAX NO. (Optional): 408-993-8496<br>E-MAIL ADDRESS (Optional): lori@costanzo-law.com; andrea.justo@costanzo-law.com<br>ATTORNEY FOR (Name): Plaintiff Patricia Harrell | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA<br>STREET ADDRESS: 191 North First Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Jose, 95113<br>BRANCH NAME: | |
| PLAINTIFF/PETITIONER: PATRICIA HARRELL<br>DEFENDANT/RESPONDENT: CITY OF GILROY, ET AL. | |
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: 17CV314125 |

TO *(insert name of party being served)*: City of Gilroy

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 08/11/2017

ANDREA JUSTO
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of ***(to be completed by sender before mailing)***:

1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify)*:
   Civil Case Cover Sheet
   Civil Lawsuit Notice
   Santa Clara County Superior Court Alternative Dispute Resolution Information Sheet

***(To be completed by recipient):***

Date this form is signed:

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

▶
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): Lori J. Costanzo, SBN 142633; Lynn Toma, SBN 100384; Andrea Justo, SBN 310122<br>Costanzo Law Firm, APC<br>111 West St. John Street, Suite 700<br>San Jose, CA 95113<br>TELEPHONE NO.: 408-993-8493 FAX NO. (Optional): 408-993-8496<br>E-MAIL ADDRESS (Optional): lori@costanzo-law.com; andrea.justo@costanzo-law.com<br>ATTORNEY FOR (Name): Plaintiff Patricia Harrell | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA<br>STREET ADDRESS: 191 North First Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Jose, 95113<br>BRANCH NAME: | |
| PLAINTIFF/PETITIONER: PATRICIA HARRELL<br>DEFENDANT/RESPONDENT: CITY OF GILROY, ET AL. | |
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: 17CV314125 |

TO *(insert name of party being served)*: Gilroy Police Department

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 08/11/2017

ANDREA JUSTO
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of ***(to be completed by sender before mailing)***:

1. [✔] A copy of the summons and of the complaint.
2. [✔] Other *(specify)*:
   Civil Case Cover Sheet
   Civil Lawsuit Notice
   Santa Clara County Superior Court Alternative Dispute Resolution Information Sheet

***(To be completed by recipient)***:

Date this form is signed:

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

▶
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

ATTACHMENT CV-5012

# CIVIL LAWSUIT NOTICE

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA 95113*

CASE NUMBER: 17CV314125

**PLEASE READ THIS ENTIRE FORM**

*PLAINTIFF* (the person suing): Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint*, *Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

*DEFENDANT* (The person sued): You must do each of the following to protect your rights:

1. You must file a written response to the *Complaint, using the proper legal form or format*, in the Clerk's Office of the Court, within 30 days of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

Warning: If you, as the Defendant, do not follow these instructions, you may automatically lose this case.

*RULES AND FORMS:* You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms: www.courts.ca.gov/forms.htm and www.courts.ca.gov/rules.htm
- Local Rules and Forms: www.scscourt.org

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

*Your Case Management Judge is:* William Elfving *Department:* 3

*The 1st CMC is scheduled for:* (Completed by Clerk of Court)
*Date:* 11/20/2017 *Time:* 2:15pm in Department: 3

*The next CMC is scheduled for:* (Completed by party if the 1st CMC was continued or has passed)
*Date:* ______ *Time:* ______ in Department: ______

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.scscourt.org or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

# SANTA CLARA COUNTY SUPERIOR COURT
# ALTERNATIVE DISPUTE RESOLUTION
# INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

***What is ADR?***
ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

***What are the advantages of choosing ADR instead of litigation?***
ADR can have a number of advantages over litigation:

- **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.
- **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.
- **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.
- **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.
- **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

***What are the main forms of ADR offered by the Court?***
**Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

**Neutral evaluation**, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

**Arbitration** is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties and then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:

- The action is for personal injury, property damage, or breach of contract
- Only monetary damages are sought
- Witness testimony, under oath, needs to be evaluated
- An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

**Civil Judge ADR** allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:

- The parties have complex facts to review
- The case involves multiple parties and problems
- The courthouse surroundings would he helpful to the settlement process

**Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.
Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

**Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.
Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

***What kind of disputes can be resolved by ADR?***
Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

***Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?***

***Contact:***
Santa Clara County Superior Court
ADR Administrator
408-882-2530

Santa Clara County DRPA Coordinator
408-792-2784




**Lori J. Costanzo**

**Lynn Toma**
*Associate*
**Andrea Justo**
*Associate*
**Gabrielle Korte**
*Of Counsel*
**Jai Dadlani**
*Of Counsel*

Reply to: andrea.justo@costanzo-law.com

August 11, 2017

**VIA CERTIFIED MAIL & EMAIL**

Shawna.Freels@ci.gilroy.ca.us

Shawna Freels
City Clerk
City of Gilroy
7351 Rosanna Street
Gilroy, CA 95020

**RE: Patricia Harrell v. City of Gilroy, Gilroy Police Department, AFSCME, et al.**
**Santa Clara County Case Number 17CV314125**

Dear Ms. Freels,

Per our call this morning, you agreed to accept service of the above-referenced complaint on behalf of the City of Gilroy and the Gilroy Police Department.

Attached please find a copy of the Summons, Civil Case Cover Sheet, Civil Lawsuit Notice, Santa Clara County Superior Court Alternative Dispute Resolution Information Sheet, and Complaint regarding the above-referenced matter.

Please provide us with the signed Notice and Acknowledgment of Receipt attached. Enclosed please find a self-addressed stamped envelope.

Let us know if you have any questions or need further information.

Very truly yours,
COSTANZO LAW FIRM

Andrea Justo
Associate Attorney

Cc: Client

111 W. St. John Street | Suite 700 | San Jose, CA 95113
office: (408) 993-8493 | fax: (408) 993-8496
*www.costanzo-law.com*

**CERTIFICATE OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

I am a citizen of the United States and a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 505 Montgomery Street 13th Floor, San Francisco, California 94111. On September 8, 2017, I served the following document(s) by the method indicated below:

**DECLARATION OF CARMEN PLAZA DE JENNINGS IN SUPPORT OF REMOVAL TO FEDERAL COURT (FEDERAL QUESTION)**

☒ by placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the **United States mail** at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited in the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by placing the document(s) listed above in a sealed envelope(s) and by causing **messenger delivery** of the envelope(s) to the person(s) at the address(es) set forth below. I am readily familiar with the business practice of my place of employment with respect to the collection and processing of correspondence, pleadings and notices for hand delivery. On September 8, 2017, I caused to be served via messenger the above-listed documents.

☐ by placing the document(s) listed above in a sealed envelope(s) and consigning it to an **express mail service** for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.

Lori J. Costanzo, Esq.
Lynn Toma, Esq.
Andrea Justo, Esq.
COSTANZO LAW FIRM, APC
111 West Saint John Street, #700
San Jose, CA 95113
Tel. (408) 993-8493
*Attorneys for Plaintiff Patricia Harrell*

Joseph Guzynski
Regional Director
AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES (AFSCME)
1515 West 190th Street, Suite 560
Gardena, CA 90248
Tel. (310) 243-1802

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Courtesy Copy Only:**

Andrew H. Baker, Esq.
Beeson Tayer & Bodine
483 9th Street, 2nd Floor
Oakland, CA 94607
Tel. (510) 625-9700
*Attorneys for Defendant AFSCME*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I am employed by an officer of a member of the bar of this Court at whose direction the service was made. Executed on September 8, 2017 at San Francisco, California.

Cheri McCaffrey

Cheri McCaffrey

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO