UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICIA HARRELL,<br><br>            Plaintiff,<br><br>      v.<br><br>CITY OF GILROY, et al.,<br><br>            Defendants. | Case No. 17-CV-05204-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 78 |

Before the Court is Defendants City of Gilroy, Gilroy Police Department ("City Defendants"), Gilroy Police Chief Denise Turner, Captain Joseph Deras, Captain Kurt Svardal, Communications Supervisor Steven Ynzunza, and Human Resources Director/Risk Manager LeeAnn McPhillips' ("Individual Defendants") (collectively, "Defendants") motion to dismiss the second amended complaint ("SAC"). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss the SAC.

## I.      BACKGROUND

### A.  Factual Background

Plaintiff Patricia Harrell ("Harrell") worked as a Public Safety Communicator for the

1

Gilroy Police Department ("GPD") for about 26 years. Second Amended Complaint ("SAC"), ECF No. 72 ¶ 16. Harrell was terminated on March 21, 2016, based on Harrell's alleged misconduct toward Harrell's trainees. *Id.* ¶ 90. Harrell disputes that she mistreated her trainees.

Harrell alleges that the GPD had a pervasive culture of sexual misconduct and that she was fired in retaliation for her refusal to condone or engage in the culture of sexual misconduct. *Id.* ¶¶ 20–23. Harrell alleges a range of sexual misconduct, including police officers having sex with members of the Gilroy Explorers, a group for 14 to 21 year olds; sexually explicit conversations between employees at work; supervisors watching pornography in front of their employees outside the workplace; and nudity at work-sponsored social events, among other things. *Id.* ¶¶ 21a–21n. Harrell alleges that the GPD retaliated against Harrell because Harrell "refused to engage in the aforementioned sexual activity or condone the sexually charged culture of the GPD." *Id.* ¶ 23.

Harrell alleges that in 2002, the GPD instituted a new system for dispatchers and assigned Harrell as the lead because Ynzunza "was improperly managing the project." Over the following decade, Ynzunza prevented Harrell from training on new software systems necessary to her job functions. *Id.* ¶¶ 24–32.

On November 20, 2005, Harrell left her shift 14 minutes early because a call came in that Officer Ray Hernandez, a close friend of Harrell's, was unconscious and not breathing. *Id.* ¶¶ 33–35. Harrell left work to go to Officer Hernandez's home. *Id.* ¶ 36. Officer Hernandez died that night from a heart attack. Harrell was later disciplined for leaving her post early. She contends the discipline was unwarranted. *Id.* ¶¶ 37–39.

In about 2006, Harrell insisted that officers follow protocol in their radio communications with dispatch. Harrell alleges that in retaliation for her efforts to instill professionalism, the officers refused to acknowledge her presence, speak to her, or look at her. Officer Geoff Guerin later tearfully acknowledged to Harrell that the officers had been instructed by their sergeant to ignore Harrell. *Id.* ¶¶ 40–44. At an unspecified time, Harrell confronted then-Sergeant Deras about Sergeant Deras's rude treatment of Harrell. During the meeting, Sergeant Deras screamed at Harrell, "You and the people who have been here a long time think your shit don't stink." *Id.* ¶

2

44.

Harrell alleges that in 2008 she received a written reprimand after warning Julie Ines, a GPD employee, to be careful around Officer Royce Heath and his wife Andrea Arthur, another GPD employee. Harrell alleges that Officer Heath and Arthur are frequently involved in sexual misconduct together. Harrell alleges that her supervisors knew of and acknowledged Ms. Arthur's inappropriate behavior but nevertheless disciplined Harrell. *Id.* ¶¶ 45–53.

Harrell alleges that in 2008, Harrell sent an internal complaint to Ynzunza and non-party Captain Moore "providing a summary and documentation of incidents when Ms. Harrell felt scared and afraid of [Officer] Heath." *Id.* ¶ 54. Harrell alleges that Captain Moore's solution to Officer Heath's conduct was ineffective, and that around that time, she received threatening notes in her mailbox at work and on her car. One note on her car allegedly said, "Better watch your back, bitch." *Id.* ¶¶ 56–57. In addition, between 2008 through Harrell's termination in March 2016, officers bombarded Harrell with questions on calls over the radio and entered her work space to intimidate her. *Id.* ¶¶ 58–61.

At another unspecified time, Sergeant Deras's wife Faustina was attempting to become a GPD dispatcher. As the senior dispatcher, Harrell would ordinarily have had final approval over Faustina's hiring, but that responsibility was taken away from Harrell because Sergeant Deras disliked Harrell. *Id.* ¶¶ 62–65.

Sergeant Deras was promoted to Captain in 2014. *Id.* ¶ 66. Harrell alleges that in May 2014, even though Harrell was the most senior dispatcher, and thus entitled by custom to choose which shifts to work, Captain Deras began assigning her to undesirable night and weekend shifts and allowed younger, less experienced female dispatchers to take the more favorable weekday shifts. *Id.* ¶ 67. Captain Deras also overloaded Harrell with dispatch duties, training duties, and overtime. When Harrell complained that the work was too much for one person to handle, Captain Deras gave Harrell even more work and began excluding her from communications department meetings. *Id.* ¶¶ 68–72.

Harrell alleges that she was investigated without justification again in 2015. *Id.* ¶¶ 73–91.

The investigation was related to Harrell's alleged mistreatment of her trainees and an alleged discriminatory remark, in which Harrell commented to one of her Latina trainees that the trainee "might be mistaken for the cleaning lady." *Id.* ¶¶ 76–79.  Harrell denies that she mistreated her trainees and argues that the remark was taken out of context.  Harrell states that Harrell is half Salvadoran and half Native American, and had told the trainee that Harrell had been mistaken for a cleaning lady when at a public safety conference in Colorado.  When the trainee commented that people "sometimes look[ed] at [her] funny" in her gated community, Harrell commented that perhaps the other residents mistook the trainee for the cleaning lady, as had happened to Harrell in Colorado. *Id.* ¶ 77.

Harrell alleges that the 2015 investigation was biased.  One female trainee interviewed during the investigation accused Harrell of having "preconceptions" about the trainee.  The trainee also stated, "we know how women are." *Id.* ¶ 85.  The investigation concluded that Harrell "uses bullying behaviors that are detrimental to the effective training and retention of dispatchers." *Id.* ¶ 89.  The GPD placed Harrell on paid administrative leave in January 2016 and terminated her on March 21, 2016. *Id.* ¶ 90.

On March 28, 2016, Harrell's attorney appealed Harrell's termination and requested a hearing before the City of Gilroy Personnel Board. *Id.* ¶ 92; *see* Ex. B to SAC, ECF No. 72-2.  On June 6, 2016, a representative from Harrell's union, the American Federation of State, County and Municipal Employees ("AFSCME"), met with the GPD and told the GPD that Officer Heath had sexually harassed Harrell and that Harrell planned to assert a retaliation claim.  Ex. C to SAC, ECF No. 73-3.  After an investigation of Harrell's claims, McPhillips concluded that "the alleged acts of sexual harassment did not occur." *Id.* ¶¶ 92–95; *see* Ex. C to SAC.

On December 29, 2016, Harrell filed complaints with the EEOC and California's Department of Fair Employment and Housing ("DFEH") against the City of Gilroy, Chief Turner, Officer Heath, and Captain Deras, in which she alleged discrimination based on her age and sex.  Ex. A to SAC, ECF No. 72-1.  On May 17, 2017, Harrell's counsel amended the DFEH complaint to add respondents Ynzunza and McPhillips. *See id.* at 10.  On May 24, 2017, Harrell received a

right-to-sue notice from DFEH. *Id.* at 12.

**B. Procedural History**

On August 7, 2017, Harrell filed a complaint in state court against the City of Gilroy, GPD (which is a department of the City of Gilroy), AFSCME, and Does 1-50. ECF No. 1-1 at 6. The state court complaint contained 13 causes of action: (1) age discrimination (Cal. Gov. Code § 12940); (2) gender discrimination (Cal. Gov. Code § 12940); (3) sexual harassment (Cal. Gov. Code § 12940); (4) failure to prevent discrimination and harassment (Cal. Gov. Code § 12940(k)); (5) whistleblower retaliation (Cal. Labor Code § 1102.5); (6) retaliation (Cal. Gov. Code § 12940); (7) wrongful termination in violation of public policy; (8) breach of duty of fair representation; (9) negligent and intentional misrepresentation; (10) negligent and intentional infliction of emotional distress; (11) breach of written and implied-in-fact contract; (12) breach of the implied covenant of good faith and fair dealing; and (13) federal civil rights violation (42 U.S.C. § 1983). The first through seventh and thirteenth causes of action were against City Defendants. The eighth and ninth causes of action were against AFSCME. The tenth through twelfth causes of action were against all defendants. On September 8, 2017, City Defendants removed the case to federal court. ECF No. 1.

On September 15, 2017, City Defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike portions of the complaint pursuant to Federal Rule of Civil Procedure 12(f). ECF No. 6. City Defendants argued that Harrell's seventh, eleventh, and twelfth causes of action failed as a matter of law because Harrell was a public employee. *Id.* at 3–4. City Defendants also argued that Harrell's fifth, seventh, tenth, eleventh, and twelfth causes of action must be dismissed because Harrell failed to allege timely compliance with the California Tort Claims Act. *Id.* at 4–5. Finally, City Defendants argued that Harrell's prayer for punitive damages should be stricken because punitive damages cannot be recovered against a public entity as a matter of law. *Id.* at 5–6.

Harrell's response to the motion to dismiss and strike was due September 29, 2017. Harrell did not file a response. On October 6, 2017, City Defendants filed a reply noting Harrell's

5

failure to oppose the motion to dismiss and strike. ECF No. 13.

On November 28, 2017, Harrell's counsel wrote a letter to the Court explaining that Harrell elected not to oppose the motion to dismiss and strike because Harrell intended to file an amended complaint "to address the issues raised by Defendants." ECF No. 46. Harrell requested that "the Court refrain from ruling on the Motion to Dismiss" because Harrell believed "that the amended pleading w[ould] resolve most, if not all of the objections raised by Defendants." *Id.* City Defendants' counsel responded with a letter that same day, in which City Defendants' counsel explained that Harrell's counsel had offered on October 12, 2017 to send a proposed amended complaint for City Defendants' review. ECF No. 47. However, as of November 28, 2017, City Defendants had not received any proposed amended complaint for review. City Defendants stated that Harrell would not be allowed to amend her complaint without stipulation or the Court's permission pursuant to Rule 15. *Id.*

On November 30, 2017, the Court granted City Defendants' motion to dismiss with leave to amend. ECF No. 15.

On December 29, 2017, Harrell filed a first amended complaint ("FAC"). ECF No. 16. The FAC added several individual defendants, all of whom Harrell sued individually and in their official capacities. Specifically, the FAC added Chief Turner, Officer Heath, Captain Deras, Captain Svardal, Ynzunza, McPhillips, and John Tucker, the business agent of AFSCME. The FAC also dropped the whistleblower retaliation, wrongful termination, breach of duty of fair representation, breach of contract, and breach of covenant of good faith and fair dealing causes of action. *Compare* FAC at 1 *with* ECF No. 1-1 at 6.

The FAC added seven causes of action, including failure to investigate or take corrective action (Cal. Gov. Code § 12940), asserted against City Defendants; retaliatory termination (Cal. Gov. Code § 12940(h)), asserted against City Defendants; negligent supervision, asserted against AFSCME; negligence, asserted against Chief Turner, Officer Heath, Captain Deras, Captain Svardal, Ynzunza, McPhillips, AFSCME, and Tucker; assault, asserted against Officer Heath, Captain Deras, and Ynzunza; supervisory liability (42 U.S.C. § 1983), asserted against Chief

6

Turner, Officer Heath, Captain Deras, Captain Svardal, Ynzunza, and McPhillips; and retaliation

(Title VII of the Civil Rights Act of 1964), asserted against City Defendants. *Compare* FAC at 1

*with* ECF No. 1-1 at 6.

On January 11, 2018, City Defendants filed a motion to strike the FAC. ECF No. 17. On

January 12, 2018, City Defendants filed an answer to the FAC. ECF No. 18. On January 25,

2018, Harrell filed an opposition to the motion to strike. ECF No. 19. On February 1, 2018, City

Defendants filed a reply. ECF No. 20. On February 28, 2018, AFSCME and Tucker filed a notice

of non-opposition to City Defendants' motion to strike. ECF No. 35.

On February 21, 2018, AFSCME and Tucker filed a motion to dismiss the FAC. ECF No.

32. On February 27, 2018, Deras, Heath, McPhillips, Turner, Ynzunza, and Svardal filed a motion

to dismiss the FAC. ECF No. 34. On March 7, 2018, Harrell filed an opposition to the AFSCME

Motion. ECF No. 40. On March 13, 2018, Harrell filed an opposition to the Officers' Motion.

ECF No. 41. On March 14, 2018, AFSCME filed a reply. ECF No. 42. On March 20, 2018, the

Officers filed a reply. ECF No. 44.

On May 25, 2018, the Court granted in part, denied in part, and deferred ruling on in part

the City Defendants' motion to strike. ECF No. 48. The Court granted with prejudice the motion

to strike the seventh cause of action for retaliatory termination as entirely redundant of the sixth

cause of action for retaliation. *Id.* at 9–11. The Court denied the motion to strike the entire FAC

as overbroad, and also denied the motion to strike the fifth cause of action after the Court found

that the fourth cause of action for failure to prevent discrimination and harassment was not

redundant of the fifth cause of action for failure to investigate or take corrective action. *Id.* at 10–

11. The Court deferred ruling on City Defendants' California Tort Claims Act argument after

determining that the argument was more properly construed as a motion to dismiss.

On August 13, 2018, the Court granted Individual Defendants' and AFCME's motions to

dismiss the FAC and denied as moot the remaining argument in City Defendants' motion to strike.

ECF No. 67.

Specifically, the Court granted Individual Defendants' motions to dismiss Harrell's causes

of action for sexual harassment and supervisory liability under § 1983 without prejudice. *Id.* at 9–13; 28–29. The Court also dismissed with prejudice Harrell's causes of action against Individual Defendants for negligence, assault, and negligent and intentional infliction of emotional distress because Harrell did not timely allege compliance with the California Tort Claims Act. *Id.* at 21–28.

The Court granted AFSCME and Tucker's motion to dismiss Harrell's cause of action for failure to prevent discrimination with prejudice because Harrell failed to allege facts related to her AFSCME claim in her DFEH complaint. *Id.* at 13–17. In granting AFSCME's motion, the Court noted that because City Defendants had not separately moved to dismiss Harrell's cause of action for failure to prevent discrimination, the cause of action survived as to City Defendants. *Id.* at 13–14. The Court also granted AFSCME and Tucker's motion to dismiss Harrell's causes of action for negligent supervision, negligence, negligent and intentional infliction of emotional distress, and negligent and intentional misrepresentation as preempted. *Id.* at 17–21. The Court dismissed the causes of action without prejudice to Harrell bringing those four claims before the California Public Employment Relations Board ("PERB"). *Id.* at 21.

In sum, the Court dismissed with prejudice Harrell's causes of action against Individual Defendants for negligence, assault, and negligent and intentional infliction of emotional distress. The Court dismissed with prejudice Harrell's cause of action against AFSCME and Tucker for failure to prevent discrimination, but noted that the cause of action survived against City Defendants because they had not moved to dismiss the cause of action. The Court dismissed Harrell's causes of action against AFSCME and Tucker for negligent supervision, negligence, negligent and intentional infliction of emotional distress, and negligent and intentional misrepresentation without prejudice to Harrell bringing those claims before the PERB. The Court dismissed without prejudice Harrell's causes of action for sexual harassment and supervisory liability under § 1983. Finally, the Court stated that Harrell's causes of action against the City Defendants for age discrimination, gender discrimination, failure to investigate or take corrective action, retaliation under Cal. Gov. Code § 12940, violation of civil rights under § 1983, and Title

8

VII retaliation survived because no party moved to dismiss those causes of action. *Id.* at 29.

The Court informed Harrell that if Harrell "fails to file an amended compliant within 30 days or fails to cure the deficiencies identified in this order, the claims dismissed in this order will be dismissed with prejudice." *Id.* at 30.

On September 12, 2018, Harrell filed the SAC, which includes eight causes of action. ECF No. 72 ("SAC"). Harrell re-alleged all seven causes of action from the FAC that City Defendants did not challenge, including her causes of action against City Defendants for age discrimination, gender discrimination, failure to prevent discrimination, failure to investigate, retaliation, violation of civil rights under § 1983, and Title VII retaliation. *Id.* ¶¶ 98–135, 168–178. In addition, Harrell amended her cause of action against Individual Defendants for supervisory liability under § 1983. *Id.* ¶¶ 136–167. The SAC dropped Harrell's cause of action against Individual Defendants for sexual harassment. The SAC also dropped Officer Heath as a defendant.

On October 17, 2018, Defendants moved to dismiss the SAC. ECF No. 78 ("Mot."). On October 31, 2018, Plaintiff filed an opposition. ECF No. 80 ("Opp."). On November 9, 2018, Defendants filed their reply. ECF No. 82 ("Reply").

## II.     LEGAL STANDARD

### A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

9

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the Court required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

**B.     Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**III.     DISCUSSION**

Harrell's SAC alleges seven causes of action against City Defendants and one cause of action against Individual Defendants. Together, Defendants move to dismiss all eight causes of action in Harrell's SAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Mot. at 2. The Court first evaluates Harrell's causes of action against City Defendants and then turns to Harrell's cause of action against Individual Defendants.

**A. City Defendants' Successive Rule 12(b)(6) Motion**

As an initial matter, the Court must address whether to consider City Defendants'

arguments in the motion to dismiss. The City Defendants previously filed a Rule 12(b)(6) motion to dismiss certain causes of action in Harrell's original complaint, but did not challenge all of Harrell's causes of action against City Defendants. After Harrell filed the FAC, the City Defendants moved under Rule 12(f) to strike the entire FAC as overbroad and to strike certain causes of action, but did not move to dismiss under Rule 12(b)(6) any of the seven causes of action against City Defendants in Harrell's FAC. Harrell has realleged all seven causes of action in the SAC. Thus, as City Defendants readily acknowledge, City Defendants have filed two prior Rule 12 motions but have never moved to dismiss under Rule 12(b)(6) all seven causes of action that Harrell's SAC alleges against City Defendants. *See* Reply at 1. Federal Rule of Civil Procedure 12(g)(2) prohibits City Defendants from moving to dismiss those causes of action for the first time at this late stage. City Defendants' arguments to the contrary are unavailing.

Federal Rule of Civil Procedure 12(g)(2) states, "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Federal Rule of Civil Procedure 12(h)(2), in turn, provides that arguments which pertain to a plaintiff's "[f]ailure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Thus, as the Ninth Circuit has explained, "Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6)," but instead must raise the defense through the three avenues permitted by Rule 12(h)(2). *In re Apple iPhone Antitrust Litigation*, 846 F.3d 313, 318 (9th Cir. 2017), *certiorari granted on other grounds by Apple Inc. v. Pepper*, 138 S. Ct. 2647 (June 18, 2018).

The procedural history of this case demonstrates that Rule 12(g)(2) bars City Defendants' instant motion. In this case, Harrell's original Complaint included five of the instant seven causes of action against City Defendants. Specifically, the Complaint included causes of action against City Defendants for age discrimination, gender discrimination, failure to prevent harassment,

11

retaliation, and violation of 42 U.S.C. § 1983. Compl. ¶¶ 76–93, 100–108, 115–120, 159–164. City Defendants brought a motion to dismiss under Rule 12(b)(6) that aimed only to dismiss Harrell's other causes of action against City Defendants, such as Harrell's cause of action for whistleblower retaliation. ECF No. 6 at 2. After the Court granted the motion to dismiss, Harrell filed the FAC, which again included causes of action against City Defendants for age discrimination, gender discrimination, failure to prevent harassment, retaliation, and violation of 42 U.S.C. § 1983. FAC ¶¶ 84–100, 107–116, 123–128, 179–184. Harrell also added two new causes of action against City Defendants, for failure to investigate, *id.* ¶¶ 117–122, and for Title VII retaliation. *Id.* ¶¶ 185–189. The City Defendants filed a motion to strike the entire FAC as overbroad and to strike Harrell's failure to investigate claim as redundant, ECF No. 17, both of which the Court denied. ECF No. 17. However, City Defendants again filed no Rule 12(b)(6) objection to Harrell's five original causes of action against City Defendants or to Harrell's two new causes of action against City Defendants. Instead, City Defendants filed an answer to Harrell's FAC. ECF No. 18.

Then, after the Court granted the motions to dismiss filed by other Defendants—AFSCME and the Individual Defendants, ECF No. 67—Harrell filed the SAC. The SAC includes Harrell's causes of action against City Defendants for age discrimination, gender discrimination, failure to prevent harassment, retaliation, violation of 42 U.S.C. § 1983, failure to investigate, and Title VII retaliation. SAC ¶¶ 98–135, 168–178. In the instant motion, City Defendants for the first time move under Rule 12(b)(6) to dismiss those causes of action. Rule 12(g)(2) plainly prohibits City Defendants' motion: "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). City Defendants made two prior Rule 12 motions, but despite having the defense available, raised no Rule 12(b)(6) defense to any the seven causes of action against City Defendants in Harrell's SAC. Therefore, the Court will not consider City Defendants' Rule 12(b)(6) motion, which violates Rule 12(g)(2).

City Defendants claim that in *In re Apple*, "the Ninth Circuit recently joined the Third and

Tenth Circuits and multiple district courts in adopting a flexible approach to permitting successive Rule 12(b)(6) motions." Mot. at 3. In *In re Apple*, the Ninth Circuit noted that at times, applying Rule 12(g)(2) strictly "can produce unnecessary and costly delays" and observed that some district courts have displayed "practical wisdom" by hearing successive Rule 12(b)(6) motions. 846 F.3d at 318–19. Thus, the Ninth Circuit stated that "we should generally be forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion." *Id.* at 319.

To decide whether the district court's consideration of a late-filed Rule 12(b)(6) motion was harmless, the Ninth Circuit addressed two factors: 1) whether the defendant's series of motions were "filed for any strategically abusive purpose"; and 2) whether declining to consider the defendant's late motion "would have substantially delayed resolution" of the standing question at issue in that case. *Id.* at 320. Thus, the Ninth Circuit affirmed that although Rule 12(g)(2) facially bars successive Rule 12(b)(6) motions, a district court has discretion to consider a successive Rule 12(b)(6) motion if the motion does not prejudice the plaintiff and expedites resolution of the case. *See id.* at 320 ("The district court's decision on the merits of Apple's Rule 12(b)(6) motion materially expedited the district court's disposition of the case, which was a benefit to both parties.").

For multiple reasons, *In re Apple* does not support City Defendants' argument. First, as a matter of procedure, the Ninth Circuit in *In Re Apple* was evaluating whether a district court may permissibly excuse a Rule 12(g)(2) violation. The Ninth Circuit was not addressing whether a district court *must* consider certain factors before applying the Rule 12(g)(2) bar. Rather, *In re Apple* provides guidelines for a district court's discretionary decision to consider a late-filed Rule 12(b)(6) motion and for how the Ninth Circuit should decide whether the district court's decision was harmless. *See* 846 F.3d at 320 (considering whether "any error by the district court in considering the motion on the merits was harmless"). *In re Apple* far from requires a district court to consider a successive Rule 12(b)(6) motion, as City Defendants concede. Reply at 1.

Second, even if the Court considers the two factors discussed by the Ninth Circuit in *In re Apple*, both weigh strongly against excusing City Defendants' Rule 12(g)(2) violation. The

13

prejudice to Harrell in this case is manifest. Well over a year ago, in August 2017, Harrell filed her original Complaint. ECF No. 1-1. City Defendants filed two Rule 12 motions, but never once raised any Rule 12(b)(6) concerns about the seven causes of action Harrell alleges against City Defendants in the instant motion. Considering City Defendants' Rule 12(b)(6) motion now might require Harrell to once again amend her pleading, were the Court to grant City Defendants' motion. If City Defendants had raised the arguments earlier, along with City Defendants' and the other defendants' prior Rule 12 motions, Harrell could have attempted to address all of Defendants' concerns in one set of amendments.

Moreover, City Defendants' scattershot approach to attacking Harrell's causes of action impedes speedy resolution of the case. If the Court were to grant City Defendants' motion, the Court would likely need to grant Harrell at least one opportunity to attempt to amend her pleadings to respond to the deficiencies first identified in City Defendants' late motion. Any subsequent motion to dismiss a Third Amended Complaint might not be heard until after the close of fact discovery in this case, which is May 17, 2019. City Defendants' decision to separate their Rule 12 arguments across three different Rule 12 motions wastes Court and party resources. It would have been far more efficient for City Defendants to raise all Rule 12(b)(6) objections in one motion.

Moreover, the factual circumstances of *In re Apple* are easily distinguishable. In *In re Apple*, the district court declined to consider defendant's Rule 12(b)(6) defenses until determining whether the plaintiff had Article III standing, which would have resolved the entire case. *See* 846 F.3d at 319. The district court had a constitutional obligation to ensure its own jurisdiction before rendering any ruling on the defendant's Rule 12(b)(6) defenses. *Id.* at 320; *see also Steel Co v. Citizens for a Better Env't*, 23 U.S. 83, 101–02 (1998) (holding that a court may not decide the merits of a cause of action before ensuring its own Article III jurisdiction). Thus, only after the plaintiff had sufficiently alleged Article III standing did the district court in *In re Apple* consider the defendant's Rule 12(b)(6) arguments. *Id.* By contrast, City Defendants' motions in this case involve the straightforward question of whether Harrell has stated legal claims.

14

In addition, the Court has explicitly relied on City Defendants' failure to raise Rule 12(b)(6) objections to Harrell's causes of action in addressing other Defendants' arguments. For example, the Court granted Harrell leave to amend her supervisory liability claim against Individual Defendants in part because City Defendants failed to move to dismiss Harrell's § 1983 claim against City Defendants: "[T]he City of Gilroy and GPD did not move to dismiss Harrell's . . . § 1983 [claim], which is also premised on an alleged due process violation. Because that claim survives, the Court is not persuaded that allowing Harrell leave to amend the associated supervisory liability claim would necessarily be futile." ECF No. 67 at 29.

Finally, City Defendants' failure to timely raise Rule 12(b)(6) objections to the instant seven causes of action is even more egregious in light of the fact that the same counsel represents both City Defendants and Individual Defendants. Yet Individual Defendants managed to move to dismiss under Rule 12(b)(6) all of Harrell's causes of action against Individual Defendants alleged in the FAC. *See* ECF No. 34 at 2. City Defendants' only excuse for their yearlong delay is that Harrell amended all of her causes of action in the SAC, which "rendered Causes of Action subject to Rule 12(b)(6) challenge in a way not presented in [Harrell's] three prior Complaints." Reply at 1. However, City Defendants cite no authority for the proposition that a plaintiff's amendments to *previously unchallenged* causes of action obviates Rule 12(g)(2)'s application. Regardless, the actual text of Harrell's unchallenged causes of action is identical in both the FAC and SAC. *Compare*, *e.g.*, FAC ¶¶ 84–92 with SAC ¶¶ 98–106.

For all of the above reasons, the Court concludes that Rule 12(g)(2) bars City Defendants' motion to dismiss all seven of Harrell's causes of action against City Defendants. Accordingly, the Court DENIES City Defendants' motion to dismiss Harrell's causes of action against City Defendants for age discrimination, gender discrimination, failure to prevent discrimination and harassment, failure to investigate or take corrective action, retaliation under Cal. Gov. Code § 12940, and Title VII retaliation.[1]

---

[1] Below, the Court addresses Harrell's cause of action against City Defendants for violation of civil rights under § 1983, which is necessarily implicated by Individual Defendants' motion to

15

**B. Defendants' Successive Rule 12(b)(6) Motion**

The Court's denial of City Defendants' successive motion leaves only Individual Defendants' motion to dismiss Harrell's cause of action against all Individual Defendants for supervisory liability under § 1983. The Court previously granted Individual Defendants' motion to dismiss the supervisory liability claim because Harrell did not contest that the FAC failed to state a claim for supervisory liability. ECF No. 67 at 28. The Court granted Harrell leave to amend and instructed Harrell that "she must plead specific facts that tie each Defendant against whom she asserts the supervisory liability claim to the alleged deprivation of her right to due process." *Id.* at 29. Harrell has now realleged the supervisory liability claim. SAC ¶¶ 136–167.

**1. Supervisory Liability Under § 1983**

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207–08 (internal citations, quotation marks, and alterations omitted).

The gravamen of Harrell's supervisory liability claim is that during GPD's 2015 investigation into Harrell's behavior toward trainees, Harrell did not receive adequate notice of "the nature or content of the investigation" prior to Harrell's investigation interview. *Id.* ¶¶ 140–142. Harrell alleges that each of the Individual Defendants "participated in the violation . . . by failing to provide adequate training, supervision, discipline, and control of Gilroy Police officers regarding the Public Safety Officers' Bill of Rights." *Id.* ¶ 138.

Individual Defendants contend that the Court should dismiss the supervisory liability claim because Harrell has failed to allege an underlying § 1983 claim for violation of Harrell's

dismiss Harrell's supervisory liability cause of action.

Case No. 17-CV-05204-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Fourteenth Amendment procedural due process rights. Mot. at 15–20; *see Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (noting that a supervisor's liability depends on finding that subordinate officer violated plaintiff's constitutional rights). The Court agrees with Individual Defendants, and thus does not reach Individual Defendants' alternative argument that the Individual Defendants are entitled to qualified immunity.

Here, Harrell alleges that GPD violated her constitutional rights because GPD failed to provide Harrell notice of the nature of the 2015 investigation in contravention of the Public Safety Officers' Bill of Rights ("PSOBR"). On September 1, 2015, Svardal provided Harrell with a written notice of the investigative interview. SAC ¶ 144. The notice stated that the investigation concerned Harrell's "possible violations of the City's Human Resources Rules and Regulations," but did not specify the violations. *Id.* Harrell alleges that other Individual Defendants also failed to inform Harrell of the investigation against her, and that all Individual Defendants "knew or should have known" that Svardal's notice was deficient under the PSOBR. *See, e.g., Id.* ¶¶ 149, 154–55. For example, Harrell alleges that GPD's Human Resources Director LeeAnn McPhillips, who was copied on Svardal's notice, violated Harrell's constitutional rights by failing to inform Harrell of the nature of the investigation against her. *Id.* ¶ 159.

The PSOBR provides certain procedural rights to public safety officers. For example, "[n]o punitive action . . . shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal." Cal. Gov. Code § 3304(b). As relevant to this case, the PSOBR requires that when a public safety officer is subject to an investigative interview, the officer "shall be informed of the nature of the investigation prior to any interrogation." Cal. Gov. Code § 3303(c).

For multiple reasons, Harrell has failed to state an underlying procedural due process claim. As an initial matter, the PSOBR is inapplicable to Harrell because she was a dispatcher at GPD, not a sworn public safety officer. The PSOBR defines "public safety officer" as "all peace officers specified" in several sections of the California Penal Code. Cal. Gov. Code § 3301.

Harrell does not allege in her SAC that a dispatcher is a public safety officer or that any of the relevant Penal Code provisions support the conclusion that the PSOBR applies to Harrell. Nor do the Penal Code provisions support such a conclusion. For example, California Penal Code § 830.1 defines "peace officer" to include "any police officer, employed in that capacity and appointed by the chief of police or chief, director, or chief executive of a public safety agency, of a city." Cal. Penal Code § 830.1(a). Noticeably absent from that provision is any reference to civilian employees of municipal police departments. The remaining California Penal Code provisions referenced in the PSOBR all identify law enforcement officers employed by other public agencies as public safety officers. *See, e.g.*, Cal. Penal Code § 830.33(c) (providing that members of transit agency police departments whose "primary duty . . is the enforcement of the law" are "peace officers"). Thus, the PSOBR does not apply to Harrell, who was a communications professional with the GPD, not a police officer.

Harrell readily admits the foregoing, but contends that GPD self-imposed a duty to comply with the PSOBR. Harrell argues in her opposition that when GPD investigated Harrell in 2008, GPD stated in the pre-interview notice that "This interrogation shall comply with the Public Safety Officers' Bill of Rights, Government Code section 3300 and following." Opp. at 28. Thus, Harrell contends, GPD's notice "conferred upon" Harrell due process rights under the PSOBR. However, while Harrell's SAC discusses the differences between the 2008 and 2015 pre-interview notices, Harrell's SAC includes no allegation that the 2008 notice provided Harrell with due process rights. More importantly, even if the SAC did not include such an allegation, Harrell cannot claim a Fourteenth Amendment due process interest in GPD's compliance with the PSOBR.

Under the Fourteenth Amendment, "a threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phx., Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)). "A protected property interest is present where an individual has a reasonable expectation of entitlement," which is "'determined largely by

18

the language of the statute and the extent to which the entitlement is couched in mandatory terms.'" *Id.* (quoting *Ass'n of Orange Cty. Deputy Sheriffs v. Gates*, 716 F.2d 733, 734 (9th Cir. 1983)). Procedural requirements only create a protected property interest "if the procedural requirements are intended to be a significant substantive restriction on . . . decision making." *Id.* (internal quotation marks and citation omitted).

The problem for Harrell is that the Ninth Circuit has squarely held that the PSOBR's notice requirements do not create a property interest cognizable under the Fourteenth Amendment. In *Stiesberg v. California*, 80 F.3d 353 (9th Cir. 1996), the Ninth Circuit held that the PSOBR "merely provides procedural safeguards that should apply" when a police department takes punitive action against a public safety officer. *Id.* at 357. Thus, the Ninth Circuit held, the PSOBR does not create the "significant substantive restriction" on government decision-making necessary to create a due process property interest. *Id.* at 357; *see also C.R. v. Seattle Pub. Schs.*, 693 F. App'x 505, 506 (9th Cir. 2017) ("[A] protected property interest can be derived from state laws and regulations, but there is no constitutionally protected property interest in strict compliance with state laws and regulations.") (emphasis removed). In other words, the Ninth Circuit has held that non-compliance with the PSOBR does not equate to a constitutional violation. *Id.* Thus, regardless of whether Harrell thought the language in GPD's 2008 notice entitled her to a PSOBR-compliant interview in 2015, Harrell did not have a due process interest in GPD's compliance with the PSOBR.

Because Harrell has not adequately alleged an underlying constitutional violation, Harrell cannot state a claim against any of the Individual Defendants for supervisory liability under § 1983, and Harrell's cause of action for supervisory liability must be dismissed.

The Court's conclusion that Harrell has not adequately alleged a Fourteenth Amendment violation also requires the Court to dismiss Harrell's § 1983 cause of action against City Defendants, which relies on the same alleged Fourteenth Amendment violation as the basis for municipal liability. *See Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) (holding that "the liability of municipalities [under § 1983] . . . is contingent on a violation of constitutional rights").

19

Further, the Court will dismiss Harrell's § 1983 causes of action with prejudice. In the Court's order dismissing claims from Harrell's FAC, the Court noted that "Harrell asserts that if granted leave to amend [the supervisory liability cause of action], Harrell would specify that she was denied her right to due process guaranteed by the Fourteenth Amendment because she was denied information about the nature of the internal affairs investigation of her in 2015." ECF No. 67 at 29. The Court granted Harrell leave to amend on that basis. The Court, however, informed Harrell that "she must plead specific facts that tie each Defendant against whom she asserts the supervisory liability claim to the alleged deprivation of her right to due process," and informed Harrell that failure to remedy that deficiency would result in dismissal with prejudice. *Id.* at 29–30. Harrell has failed to remedy the deficiency. As outlined above, Harrell predicates her supervisory liability claim against Individual Defendants and her § 1983 claim against City Defendants on GPD's failure to comply with the PSOBR, but Harrell is not subject to the PSOBR. That fact—as Harrell herself admits—will not change between now and a putative Third Amended Complaint, which renders any amendment futile. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (a district court may deny leave to amend where "any amendment would be futile").

In addition, granting Harrell leave to amend to file a Third Amended Complaint would cause "undue prejudice to the opposing party." *Leadsinger*, 512 F.3d at 532 (internal quotation marks and citation omitted). The fact discovery cutoff in this case is May 17, 2019. ECF No. 65. If Harrell files another pleading in this case, any subsequent motion to dismiss might not be heard until after that fact discovery cutoff. There is no time for yet another round of briefing on a motion to dismiss, and requiring City Defendants to file a fourth Rule 12 motion would cause City Defendants undue prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Individual Defendants' motion to dismiss Harrell's cause of action for supervisory liability under § 1983 with prejudice; dismisses Harrell's cause of action against City Defendants for violation of federal civil rights under § 1983; and

20

DENIES City Defendants' motion to dismiss Harrell's remaining six causes of action.

**IT IS SO ORDERED.**

Dated:  February 5, 2019

_Lucy H. Koh_

LUCY H. KOH
United States District Judge